210

## H. MILLER & SONS, Inc. v. COOPER CITY UTILITIES, Inc.
Docket No. 760299-WS (CP).   Order No. 7650.
Florida Public Service Commission.
February 21, 1977.

B. Kenneth Gatlin and John W. Costigan, both of Tallahassee, for H. Miller & Sons, Inc.

Kenneth Myers, Miami, for Cooper City Utilities, Inc.

Leon F. Olmstead, for the commission staff and the public generally.

The following commissioners participated in the disposition of this matter — WILLIAM T. MAYO, Chairman, and Commissioners WILLIAM H. BEVIS and PAULA F. HAWKINS.

BY THE COMMISSION.

Pursuant to notice, the commission, by its duly designated hearing examiner, Harold Smithers, held a public hearing on this matter in Tallahassee on September 17, 1976. At the conclusion of the hearing, all parties waived further participation by the hearing examiner. Now, having considered all the evidence, we enter our order.

In April 1976 the complainant, H. Miller & Sons, Inc. (Miller) filed a complaint against Cooper City Utilities, Inc. (Cooper City), the defendant. In substance, the complainant alleges that on or about October 20, 1972, an agreement was entered into with the utility to obtain water and sewer utility service for 500 single family dwellings or their equivalent, and to pay therefor $125,000 in accordance with a stated schedule. In addition, complainant had to, and did, provide water and sewer lines to make the interconnection with the utility (Ex. 3).

The above sum was paid in full on or about January 19, 1975. One hundred and eight homes had been connected to the systems by October 9, 1975 when, by Order No. 6953, the utility received permission to increase connection charges from $110 for both services to $100 for water and $175 for sewer, for each single family unit or its equivalent (ERC) (Ex. 10).

Beginning October 9, 1975, Miller paid an additional $550 per residential unit, under protest. After 16 units had been paid for at $550 each (May or June, 1976) Cooper City refunded $2,450, reducing the charge by $245 for each of 10 residential units. This reduction represented off-site charges for the sewer system. The amount of $245 per residential unit for six units had not been refunded as of the hearing date. Between May or June, 1976, and the hearing date, nine units had been connected to the system and $305 per unit had been paid therefor. ($125 represented a meter installation fee).

At the hearing, the parties stipulated to the accuracy of the above recited facts.

Miller complained that the connection charges were excessive and asked for a refund of all in excess of $110 per ERC. This claimed refund amounted to $70,000.

The utility counter-complained for an additional $15 per single family unit, for main capacity for the water system. However, at the hearing, it admitted this had not been demanded from any other developer and was sought here only because the complainant had brought these proceedings and sought the refund.

The company tariff, at all times herein relevant, provided for pro-rata allocation, on a hydraulic share basis, of the cost of off-site mains providing service to each developer (p. 23.01 & 23.02 for sewer and p. 29.01 & 29.02 for water of Ex. 10—current tariffs).

The utility, in October 1972, apparently calculated the off-site main charges and arrived at $140 which added to the $110 connection charge, amounted to $250 per ERC.

There are two specific questions to be resolved herein —

1.  What are the correct charges for the main extension/ main capacity of the water system Miller should pay?

2.  Does the increase in connection (plant capacity) fees authorized by Order No. 6953 apply to connections by Miller to the water and sewer systems after the effective date thereof?

*Main capacity charges*

The complainant provided all on-site and off-site sewer mains so there is no charge therefor (Ex. 6).

The off-site water main capacity charges were calculated by the utility's engineering witness to be $156 per ERC as of December 31, 1974 (Ex. 12). This is not acceptable. It is based, in part, on an engineering appraisal of the system, not the original cost, and could result in recovery of over 100% of the actual cost of the installation. The witness used the percentages developed in the engineering report (Ex. 13) to establish a percentage of the water transmission system to the total utility plant, both water and sewer. This percentage was then applied to the total plant investment as stated in the utility's 1974 annual report. The cost of the distribution system thus established was $744,312, whereas the annual report reflected the original cost to be $529,078. We believe the yearly development of the costs, reported under oath by an officer of the company in the annual report filed with this commission is preferable for determining the cost of the distribution system.

However, herein, it is not necessary to be concerned with the cost of the main capacity because the agreed price was paid, the connection made and therein the contract was fully executed, at least by September 6, 1973, when the first unit was connected. The counterclaim for the $15 per ERC for main capacity must be denied and the payments therefor since October 9, 1975 must be refunded. Order No. 6953 dealt only with connection fees and its effect must be limited thereto.

*Connection (plant capacity) charge*

The contract between the parties consisted of a letter dated October 20, 1972 from the utility (predecessor of the defendant herein) acknowledging a request of water and sewer utility service and offering to expand its facilities to provide capacity for 500 ERC's for $125,000 (on a payment schedule not here relevant). A copy of the company "Water and Sewer Extension Policy" was provided, the matters contained therein to govern the arrangement. The letter further limited the utility's responsibiliy to providing plant capacity; Miller to construct necessary lines or connections to make the treatment plant capacity available for its use. This offer was accepted by Miller (Ex. 3).

On May 30, 1972, the "Water and Sewer Extension Policy" of the utility was filed with this commission in compliance with Order No. 5403 entered in Docket No. 71426-WS. Original Sheets No. 29.0 of the water tariff and 23.10 of the sewer tariff contain identical provisions for increasing connection charges by application to this commission (Ex. 5 herein). This was, as noted above, by reference, made a part of the agreement between the parties; thus, Miller was on notice the connection charges might be increased.

It is well established that contracts with public utilities are made subject to the reserved authority of the state, under the police power or express statutory or constitutional authority, to modify the contract in the interest of the public welfare without unconstitutional impairment of contracts. *Midland Realy Company v. Kansas City Power and Light Company,* 300 U.S. 687, 81 L.Ed. 540 (1936); *City of Plantation v. Utility Operating Co.,* 156 So. 2d 842; *Miami Bridge Co. v. Railroad Commission,* 20 So.2d 356 (1945). (See also 14 ALR 249; 11 ALR 454; 9 ALR 1420; 64 Am. Jur. Public Util., Secs. 81 and 83).

The rights of the party to a contract such as is herein concerned, who has provided all of the consideration required of him and the consideration has passed to the utility, has been before various courts. The decisions uniformly require the utility to apply the legal rates, without discrimination, leaving the customer to other forums for recourse, either for recovery of the property given to the utility or damages in lieu thereof. (See 14 ALR 249; 11 ALR 454; 9 ALR 1420). To hold otherwise would be to permit private contracts to dispossess the state of a portion of its police power, *Miami Bridge Co. v. Railroad Commission,* supra. (See 9 ALR 1428, 1436).

Both parties requested and were granted permission to depose witnesses and were allowed two months from the date of the hear-

ing to do so. The complainant has timely filed a copy of the deposition it requested. The defendant has filed a motion to either strike the deposition or retake it, alleging that notice thereof was not received by defendant's counsel until the day following the date the deposition was taken. No basis other than non-receipt of notice was alleged.

A careful reading of the deposition discloses no evidence not considered in the foregoing discussion. No useful purpose would be served by granting the defendant's motion.

The defendant has not provided the deposition it was authorized to take. However, the information indicated to be developed therefrom would not change the above discussion or conclusions as it was limited to verification that the water plant (system) was at full capacity in late 1972 and early 1973.

The defendant has not provided late-filed Exhibits 14 and 15. Exhibits 14 and 15 also dealt with water plant (system) capacity at the end of 1972. In view of the above conclusions relating to the off-site water main capacity charges, these are no longer required for disposition of this complaint.

We hereby adopt and affirm the foregoing. It is therefore ordered that the complainant, H. Miller & Sons Utilities, Inc., must pay for all connections added to the Cooper City Utilities water and sewer system after the effective date of Order No. 6953, at the rate of $100 for water and $175 for sewer for each equivalent residential connection, less the $110 per connection previously paid.

It is further ordered that the cross-complaint for $15 per connection be and the same is hereby denied; further, the amount of $15 collected by the utility from H. Miller & Sons, Inc. since the effective date of Order No. 6953 be and the same is hereby ordered to be refunded.

It is further ordered that the part of the complaint seeking refund of the amount of $70,000 be and the same is hereby denied.

It is further ordered that the motion to strike or retake the deposition of Alfred Neway be and the same is hereby denied.