579 P.2d 110

CITIZENS UTILITIES COMPANY, Appellant,

v.

IDAHO PUBLIC UTILITIES COMMISSION, Respondent.

Application of CITIZENS UTILITIES COMPANY for an Order Approving Revised Rates and Charges for Electric Service in the State of Idaho (two cases).

No. 12562.

Supreme Court of Idaho.

May 17, 1978.

Kenneth G. Bergquist, Boise, John H. Engel, Stamford, Conn., for appellant.

Wayne L. Kidwell, Atty. Gen., Dan L. Poole, Deputy Atty. Gen., Boise, for respondent.

DONALDSON, Justice.

Citizens Utilities Company ("Citizens"), the appellant, provides electric and water utility services in the Wallace, Idaho area and is subject to the jurisdiction of the Idaho Public Utilities Commission ("Commission").

Citizens filed an application with the Commission on January 23, 1976 for an order approving revised schedules of rates and charges for both electric and water services. The application requested the Commission to issue an order finding the rate and charge increase just and reasonable and effective for all services rendered on or after March 1, 1976.

On February 18, 1976, the Commission entered an order pursuant to I.C. § 61-622 suspending for a period of six months, from March 1, 1976, Citizens' proposed rates for both electric and water services. On June 1, 1976 the matters were set for public hearings. The cities of Wallace and Mullan, Idaho were allowed to intervene, as

well as another interested party. Hearings were held on June 22–25, 1976 and on July 20, 1976. On August 16, 1976 the Commission issued an order suspending the proposed increases for an additional sixty days.

On October 14, 1976 the Commission issued an order denying in full and dismissing the water application. The President of the Commission filed a "special concurrence" accompanying this order. The special concurrence stated that the result of the order was not satisfactory to anyone concerned. The concurrence stated that under I.C. § 61–622 the Commission is required to act upon rate increase applications within seven months and if the applications are not acted upon within this time the rate increases automatically go into effect. The concurrence further stated that the order denying the application issued because the Commission had not reached a conclusion concerning the fairness of the water rate increases and did not want the rates to take effect automatically. The concurrence indicated that the unsatisfactory condition could be remedied by the rehearing and refiling processes.

Also on October 14, 1976, the Commission issued an order regarding the electric application. The order allowed Citizens only part of the requested rate increase.

Rehearings were requested by Citizens in both cases and rehearings were held on January 11–12, 1977. On February 11, 1977, the Commission entered an order denying and dismissing both of the petitions for rehearing.

This appeal is taken by Citizens from the various orders entered by the Commission in the two cases.

This appeal is a consolidation of two cases, one involving the water application and the other involving the electric application. The portion of the appeal dealing with the water application presents only one issue, that being whether the Commission erred by denying and dismissing the application for increased water rates and, if

so, what is the effect of this error. The portion of the appeal concerning the electric application is more complicated in that it involves a number of sub-issues, each of which must be decided to determine if the Commission erred by refusing to grant the full rate increase requested by Citizens.

Citizens assigns as error the Commission's decision in the electric application regarding:

(1) Citizens' rate base;

(2) Citizens' test year operating expenses; and

(3) Citizens' rate of return on investment.

We will first address Citizens' assignment of error regarding the water application.

I

WATER APPLICATION

Citizens argues that the order entered by the Commission denying and dismissing the application for increased water rates and charges was unlawful. Citizens claims that the order was arbitrary and capricious and not based on sufficient findings of fact. The Commission admits that the order did not satisfactorily dispose of Citizens' water application but denies that the order was arbitrary and capricious and thus unlawful. The Commission argues that the order was the only solution to the problem faced by the Commission. The Commission argues that since it had not reached a conclusion concerning the propriety of the proposed rate increases, a duty imposed by I.C. § 61–622, the only alternative was to issue the order denying the rate increase. The Commission contends that the order was necessary to avoid the implementation of rates which had not been found to be fair and justified by the Commission.

Citizens contends that since the Commission's order was unlawful, the order must be set aside as provided by I.C. § 61–629.[1]

---

1. 61–629. Matters reviewable on appeal—Extent of review—Judgment.—No new or additional evidence may be introduced in the Supreme Court, but the appeal shall be heard on the record of the commission as certified by it. The review on appeal shall not be extended

Citizens further contends that the result of setting aside this order is the automatic implementation of the rate increase requested by Citizens in its application. The Commission agrees that the order should be set aside but argues that the matter must be returned to the Commission so the Commission will have an opportunity to reach a satisfactory conclusion concerning the merits of the requested increase. The Commission strongly contends that the setting aside of the order should not result in the automatic implementation of the requested rate increases. Since both parties agree that the order must be set aside, the only question presented for our consideration concerns the effect of setting aside this order.

Idaho Code § 61–307 [2] provides that a utility must give both the Commission and the public thirty days notice of any increase in rates. This statute, read alone, would indicate that thirty days notice is the only requirement for a rate increase. This statute, however, must be read in conjunction with I.C. § 61–622.[3] The first sentence of I.C. § 61–622 specifies that "[n]o public utility shall raise any rate, fare, toll, rental or charge . . . under any circum-

further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the Constitution of the United States or of the state of Idaho. Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside the order of the commission. In case the order of the commission is set aside the commission, upon its own motion or upon motion of any of the parties, may alter or amend the order appealed from to meet the objections of the court in the manner prescribed in section 61–624.

**2.** 61–307. Schedules—Change in rate and service.—Unless the commission otherwise orders, no change shall be made by any public utility in any rate, fare, toll, rental, charge or classification, or in any rule, regulation or contract relating to or affecting any rate, fare, toll, rental, charge, classification or service, or in any privilege or facility except after thirty (30) days' notice to the commission and to the public as herein provided. Such notice shall be given by filing with the commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force, and the time when the change or changes will go into effect. The commission, for good cause shown, may allow changes without requiring the thirty (30) days notice herein provided for, by an order specifying the changes so to be made and the time when they shall take effect, and the manner in which they shall be filed and published. When any change is proposed in any rate, fare, toll, rental, charge or classification, or in any form of contract or agreement or in any rule, regulation or contract relating to or affecting any rate, fare, toll, rental, charge, classification or service, or in any privilege or facility, attention shall be directed to such change on the schedule filed with the commission by some character to be designated by the commission, immediately preceding or following the item.

**3.** 61–622. Finding of commission necessary for increase in rate.—No public utility shall raise any rate, fare, toll, rental or charge or so alter any classification, contract, practice, rule or regulation as to result in an increase in any rate, fare, toll, rental or charge, under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified. The commission shall have power, and is hereby given authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleadings by the interested public utility or utilities, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation, and pending the hearing and decision thereon, such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not go into effect; provided, that the period of suspension of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not extend beyond thirty (30) days when such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation would otherwise go into effect, pursuant to section 61–307, Idaho Code, unless the commission in its discretion extends the period of suspension for an initial period not exceeding five (5) months, nor unless the commission after a showing of good cause on the record grants an additional sixty (60) days, provided further, that prior to the expiration of said periods of suspension the commission may, with the consent in writing signed by the party filing such schedule, permanently or further suspend the same. On such hearing, the commission shall establish the rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable.

stances whatsoever, except upon a *showing before the commission and a finding by the commission* that such increase is justified." (emphasis ours) The second sentence of I.C. § 61–622 provides the mechanism for carrying out the requirements of the first sentence, in that it provides that the Commission can "enter upon a hearing concerning the propriety" of requested rate increases and enter orders suspending for a period not exceeding seven months the time when the requested rate increase would otherwise go into effect pursuant to I.C. § 61–307.

The problem the Commission faced below and that which we face on appeal is what results when the Commission has failed to reach a conclusive decision concerning the merits of a requested increase within the seven month period provided by I.C. § 61–622. The Commission, having failed to reach a decision at the end of the seven month period, entered an order denying in full the requested rate increase.

▉ Idaho Code § 61–622 contemplates that the Commission must decide the merits of rate increase requests within the seven month period provided and that these requested increases cannot be suspended for more than a seven month period. We hold that if the Commission fails to reach a decision concerning the propriety of the requested increase at the expiration of the seven month suspension period, the requested increase must go into effect. We point out that this would not be the result if the Commission's decision was delayed because of action by the utility.

Prior to March 21, 1975, I.C. § 61–622, in its entirety, only consisted of what is now the first sentence of the present statute. In March, 1975, I.C. § 61–622 was amended wherein the second sentence which limits the period of suspension to seven months, was added. 1975 Idaho Sess. Laws, ch. 81, p. 166. On March 31, 1976, I.C. § 61–622 was again amended. The 1976 amendment, among other things, extended the suspension period some sixty days. 1976 Idaho Sess. Laws, ch. 263, p. 887.

The Commission, in essence, is asking us to disregard the language of I.C. § 61–622 added by the 1975 and and 1976 amendments which places a limit on the time a requested increase can be suspended. We cannot disregard this language.

If the Commission fails to reach a conclusion concerning the merits of a requested increase within the seven month suspension period, the rate must go into effect. The fact that the requested rate increase must go into effect at the expiration of the seven month period, of course, does not in any way conclude the Commission's inquiry into the propriety of the rate increase or in any way limit the Commission's authority and duties. If the suspension period expires before the Commission has reached a conclusion, the utility may implement the new rates subject to subsequent modification by the Commission. Under I.C. § 61–502, the Commission is under a continuing obligation to review utility rates and charges. *Grindstone Butte Mut. Canal v. Idaho Power Co.*, 98 Idaho 860, 574 P.2d 902 (1978); I.C. § 61–502.

II

ELECTRIC APPLICATION

A

RATE BASE

▉ A utility's "rate base" represents the original cost minus depreciation of all property justifiably used by the utility in providing services to its customers. Utilities are allowed to charge customers rates which will yield a certain percentage return on the utility's total investment. Thus, the larger the utility's rate base the higher the rates utilities can charge to customers.

Citizens assigns as error exclusion of items by the Commission from Citizens' rate base.

Citizens' first assignment of error concerning the Commission's determination as to the rate base relates to moneys received from the State of Idaho. Citizens was compelled by the State of Idaho to relocate one of its electric service lines that conflicted

with the construction of the interstate highway. The cost of this removal and relocation was $128,396. Pursuant to I.C. § 40–120(9),[4] the state paid Citizens $108,011 for moving and relocating the service line. Citizens' electric application requested that the entire cost of the relocation, i. e., $128,396, be included in the rate base. The Commission held that only the excess cost beyond the state's reimbursement was includable in the rate base and thus the amount paid to Citizens by the state, the $108,011, should not be included. We hold the Commission correctly excluded this amount from the rate base.

"It is the duty of the Commission . . . to fix just and reasonable, non-discriminatory rates . . . and in fixing such rates to allow the utility furnishing the service to make a just and reasonable profit or return on *its* investment." (emphasis ours) *Application of Pacific Tel. and Tel. Co.,* 71 Idaho 476, 480, 233 P.2d 1024, 1026 (1951). The Commission found:

> "The monies received from the State were tax funds derived from taxes upon all the citizens of the State of Idaho; these funds were not furnished by the stockholders nor owners of Petitioner [Citizens]. This Commission is of the opinion that the ratepayers of Petitioner [Citizens] should not be required to pay a rate of return on these funds nor on the capitalized re-located service facilities which were paid for by these funds.

We agree with the Commission. The contract between the state and Citizens specified that the moneys paid were for the "actual cost of removal, relocation, or adjustment" of the service line. Citizens is only entitled to a return on moneys invested by its shareholders. Citizens had to invest $20,385 ($128,396 minus $108,011) as a consequence of the powerline relocation and is entitled to a return only on this investment. Citizens, however, should not be allowed a return on moneys which were not invested by its shareholders.

Citizens' second assignment of error concerning exclusions from the rate base pertains to a billing machine. In July, 1976, Citizens placed in service at Wallace, Idaho a billing machine. The billing machine had been transferred to Wallace from one of Citizens' operations in Arizona. Citizens' electric application requested that the cost of the billing machine be included in the electric rate base. In its original order, the Commission stated that the cost of the billing machine would ordinarily be included in the rate base but declined to add any amount to the rate base for the billing machine because the Commission felt that Citizens had failed to prove or establish the actual cost of the billing machine. On rehearing, Citizens introduced additional evidence establishing the cost of the billing machine. In its order issued after rehearing, the Commission again refused to include the cost of the machine in the rate base but this time, in its second order, the Commission stated that the cost of the machine should not be included in the rate base for this case because the billing machine was not placed in service during the test year, 1975.

Citizens argues that the Commission erred by excluding this item from the rate base. We agree.

This Court has stated before that test year data should be adjusted for anticipated and known changes where the changes are shown to be reliable and certain. *Agricultural Prod. v. Utah Power and Light Co.,* 98 Idaho 23, 557 P.2d 617 (1976). There was no reason to exclude the cost of

---

4. 40–120. Duties and powers of the board.— The Idaho transportation board, subject to the right of protest hereinafter provided for, shall be vested with the functions, powers and duties relating to the administration of this act and shall have power to:

(9) Purchase, condemn or otherwise acquire (including exchange), any real property, either in fee or in any lesser estate or interest, rights of way, easements and other rights and rights of direct access from the property abutting highways with controlled access, deemed necessary by the board for present or future state highway purposes. The order of the board that the land sought is necessary for such use shall be prima facie evidence of such fact.

. . . . .

the billing machine from the rate base. Citizens introduced sufficient evidence to establish that the 1975 test year data which did not include the cost of the billing machine did not accurately reflect Citizens' capital investments. Citizens also introduced sufficient evidence to establish the cost of the billing machine. The Commission should include in the rate base all items which are proven with reasonable certainty to be justifiably used in providing services. There are two good reasons for including these items in the rate base; first, to avoid a rate base which does not adequately demonstrate real revenue needs and second, to reduce the necessity of a future application to adjust the rate base to represent additional investments. The decision of the Commission on this particular item is error. The cost of the billing machine should have been included in the rate base.

■ The third assignment of error by Citizens regarding the rate base pertains to minimum checking account balances. Citizens' electric application requested that some $8,000 be added to the rate base for minimum bank balances. Citizens introduced evidence showing that banking institutions require certain minimum checking account balances before short-term loans will be made at low interest (prime interest) rates. Citizens' application asked that these minimum bank balances be included in the rate base so Citizens could take advantage of the lower interest rates. The Commission refused to include this amount in the rate base for two reasons. First, the Commission stated that Citizens introduced no evidence demonstrating the need for significant short-term borrowing either in the test year or thereafter. Second, the Commission stated that Citizens had failed to demonstrate that its Idaho operation required short-term borrowing services.

We hold that the Commission erred by excluding this amount from the rate base. Citizens introduced evidence indicating that short-term debt constituted 8.4% of its capital structure. Citizens' total capital structure amounted to $640,200 and thus approximately $54,000 of Citizens' capital structure was composed of short-term debt. Citizens introduced evidence indicating that, at a minimum, banks require that 15% of this debt be maintained in checking accounts before prime interest rates are available on short-term debt. Citizens would have to maintain a balance of approximately $8,000 to receive the favorable interest rates.

This amount, the $8,000, should have been included in the rate base. The Commission erroneously concluded that Citizens demonstrated no need for short-term borrowing. The Commission, in fact, has taken an inconsistent position. As will be seen later, the Commission held that the cost of short-term debt should be the prime interest rate. It is unfair to Citizens to set this cost of short-term debt at the prime interest rate and then deprive Citizens of the assets it needs to keep the cost of the debt down at this low level. Although it may be true that in the test year itself there was no short-term borrowing, the evidence indicates that short-term borrowing is an integral part of Citizens' capital structure. Citizens should be allowed to maintain these minimum bank balances in order to be in a position to take advantage of low interest rates when needed.

The final assignment of error by Citizens regarding the rate base pertains to the method used by the Commission in arriving at a test year rate base. The Commission adopted an average year rate base. An average year rate base is calculated by adding the test year opening rate base to the test year closing rate base and by dividing by two. Citizens claims that the Commission erred by adopting an average year rate base in that such a rate base will not allow Citizens to earn a reasonable return in the future. Citizens argues that the Commission should have adopted a year end rate base, current value rate base, or even a future year rate base. Citizens also argues that the Commission made a mechanical error in its calculation of the average year rate base.

■ The purpose of appellate review by this Court of decisions by the Idaho Public Utilities Commission is "to look at

the overall effect of the rate fixed to determine whether the return to the utility is reasonable and just." *Intermountain Gas Co. v. Idaho Public Utilities Commission,* 97 Idaho 113, 120, 540 P.2d 775, 782 (1975). After reviewing the record in this case we cannot say that the adoption by the Commission of the average year rate base or the mechanical error made by the Commission in calculating the average year rate base resulted in an unreasonable or unjust overall return for Citizens. Consequently, we hold that the Commission's use of the average year rate base was not error.

## B

### TEST YEAR OPERATING EXPENSES

 Citizens argues that the Commission erred by excluding some $37,273 in expenses. Citizens argues that the Commission erred by adhering to 1975 recorded data in making its determination of test year expenses in that the Commission made no adjustments in the recorded data for known changes. Citizens also argues that the Commission erred by excluding from test year expenses the salaries and fringe benefit expenses of an assistant manager's position.

Regarding the exclusion from expenses by the Commission of the cost of the assistant manager's position, we hold the Commission erred. This position was created by Citizens in August, 1974. In addition to responsibilities as a construction and field superintendent, the assistant manager's duties also included general management functions. The evidence shows that the assistant manager's position was created for two reasons. First, beginning in 1974 Citizens became involved in considerable construction work. This construction work was expected to continue until approximately 1979. As a consequence of this work, a construction and/or field superintendent was needed. Second, Citizens' present manager has been with the utility some 29 years and was expected to retire in the near future. The new assistant manager's position was created with the expectation that the person filling this new position would assume the responsibilities of the present manager upon his retirement. The Commission refused to allow this expense, stating in its final order:

[I]t is apparent that the careful supervision by the assistant manager of the highway relocation projects and his knowledgeable aid in emergencies, particularly as to the electric plant, is of benefit to the ratepayers of Petitioner. The highway relocation projects will last for several more years; by that time the present manager will be virtually at retirement age. There is an advantage to a smooth turnover of management functions at the time of the retirement of the present manager; but the Commission, in any event, lacks the time to make the calculation necessary to include the assistant manager's salary back into the expenses of Petitioner.

Thus, the Commission even recognized that Citizens introduced evidence establishing the need and advisability for hiring the assistant manager. The expense of the assistant manager's position was shown to be a justifiable expense by Citizens and should have been allowed by the Commission.

 Regarding the exclusion by the Commission of the other items of expenses, we find no error. Citizens argues that the Commission erred by refusing to increase items over and above the test year figures. The Commission refused to allow the increases because the Commission felt that Citizens had failed to show that the requested increases were definite and certain. The nature and scope of review by this Court in rate making cases is limited to an inquiry regarding the overall effect of the Commission's decision. If the Commission's decision results in an overall just and reasonable result, the decision will not be disturbed on appeal. *Intermountain Gas Co. v. Idaho Public Utilities Commission, supra; Agricultural Produce Corporation v. Utah Power and Light Co., supra.* We hold that the Commission's decision regarding these increases in test year expenses will not result in an unjust or unreasonable return for Citizens.

## C

### RATE OF RETURN

Citizens assigns as error and generally contends that the Commission erred by allowing only a 9.6% overall rate of return on capital. Citizens argues that the Commission should have allowed, at a minimum, an overall rate of return not less than 11.21%. Specifically, Citizens assigns as error the Commission's computation of the cost of long-term debt, short-term debt, and equity. Citizens also specifically assigns as error the Commission's adoption of a hypothetical capital structure (i. e. what percentage of the capital structure should be composed of debt and what percentage of the capital structure should be composed of equity). Citizens contends that the Commission's errors regarding these four questions resulted in an insufficient rate of return.

### [1]
### COST OF LONG–TERM CAPITAL DEBT

■ Detailed discussion of this issue is not warranted. Even if the Commission had adopted and used the method of calculating the cost of long-term debt as advocated by Citizens, the end result would not be changed. The use of Citizens' method for calculating the cost of long-term debt would have resulted in an overall rate of return of 9.57%. This would be less than the 9.6% allowed by the Commission. Therefore, we find no error in the Commission's decision regarding the cost of long-term debt.

### [2]
### COST OF SHORT–TERM DEBT

■ The Commission determined that the cost of short-term debt should be 6.75% or the prime interest rate. Citizens argues that this percent would be correct only if the Commission allowed Citizens to maintain minimum bank balances and included these minimum bank balances in the rate base. In light of our decision that the minimum bank balances should have been included in the rate base we find no error in

the Commission's allowance of 6.75% as the cost of short-term debt.

### [3]
### COST OF EQUITY CAPITAL

■ Citizens contends that the Commission's findings regarding the cost of equity capital are not supported by the evidence. Citizens argues that the approach [5] used by the Commission to calculate the cost of equity has inherent infirmities and consequently should not have been employed.

The questions of "cost of equity" and "rate of return" are matters which raise extremely complicated issues. Deciding these questions is a function of the Idaho Public Utilities Commission and these questions are within the Commission's area of expertise.

"Our function upon appeal is 'to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the Constitution of the United States or the State of Idaho.'" *Intermountain Gas Co. v. Idaho Public Utilities Commission, supra* at 127, 540 P.2d at 789 (quoting I.C. § 61–629). The cost of equity capital or the rate of return to equity capital allowed by the Commission was 13.4%. After reviewing the record, we cannot say that the Commission's decision on this issue has resulted in the violation of any of Citizens' rights guaranteed by federal or state law. Consequently, the decision of the Commission pertaining to the cost of capital was correct.

### [4]
### HYPOTHETICAL CAPITAL STRUCTURE

The Commission, in setting an overall rate of return on capital, determined that Citizens' capital structure should be composed of 55% debt—45% equity as compared to Citizens' actual capital structure which constituted a larger percentage of equity as compared to debt. The Commission adopted this ideological capital structure in setting the rate of return on capital "to encourage Citizens to adopt such a capital

---

5. The approach used by the Commission is referred to as the "deferred cash flow method."

**174**

structure so as the cost of capital for consumers would be minimized."

 This Court has stated before that the adoption by the Commission of a hypothetical capital structure is within the Commission's regulatory discretion. *Petition of Mountain States Telephone and Telegraph Co.*, 76 Idaho 474, 284 P.2d 681 (1955). The only question presented to this Court when the regulatory commission has adopted such a hypothetical capital structure is whether, under the circumstances of the case, the Commission abused its discretion. *Petition of Mountain States Telephone and Telegraph Co., supra.*

We hold that the Commission's adoption of the 55–45% hypothetical capital structure was supported by substantial and competent evidence and was not an abuse of discretion. The decision of the Commission regarding Citizens' capital structure is affirmed.

The orders of the Commission are set aside.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.