Big Run Telephone Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Walter W. Cohen, Consumer Advocate, Intervenor.

Argued February 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., MACPHAIL and DOYLE.

*John H. Isom*, with him *W. Russell Hoerner*, of counsel: *Morgan, Lewis & Bockius*, for petitioner.

*Bohdan R. Pankiw*, Assistant Counsel, with him *Steven A. McClaren*, Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.*, Chief Counsel, for respondent.

*Daniel Clearfield*, with him *Norman James Kennard*, Assistant Consumer Advocate, and *Walter W. Cohen*, Consumer Advocate, for intervenor.

OPINION BY JUDGE DOYLE, August 12, 1982:

Big Run Telephone Company (Big Run), a wholly owned subsidiary of Citizen's Utility Company (Citizen's), appeals here from an order of the Pennsylvania Public Utility Commission (P.U.C.) which, *inter alia*,[1] disallowed a portion of a proposed rate increase. We affirm.

Big Run, a small public utility furnishing telephone service to approximately 923 customers in Jefferson and Indiana counties, filed a tariff supple-

---

[1] This order also addressed certain service complaints filed by the Borough of Big Run and the Office of the Consumer Advocate.

ment with the P.U.C. on July 27, 1980, proposing certain modifications in its rates which would have increased its annual revenues by $104,829, an increase of approximately 34%. In computing the tax expense portion of this proposed rate increase, Big Run, whose capital structure was in fact entirely devoid of long term debt, utilized a hypothetical interest expense of $22,268. It arrived at this figure by allocating to itself a portion of its parent's (Citizen's) actual interest expense on the basis of the ratio of its net worth to Citizen's consolidated net worth.

Following the filing of this tariff supplement complaints were filed by both the Borough of Big Run and the Office of the Consumer Advocate and in an order dated August 28, 1980, the P.U.C. subsequently initiated an investigation into the lawfulness and reasonableness of Big Run's existing and proposed rates. After conducting nine days of extensive hearings, the issuance of an Administrative Law Judge's recommended decision, and the filing of exceptions to that decision, the P.U.C. issued a final order, dated April 3, 1981, permitting Big Run to increase its annual revenues by $71,841, an amount $32,988 less than that requested. In its decision, the P.U.C. concluded, *inter alia,* that Big Run had abused its managerial discretion by maintaining a capital structure composed entirely of equity, and assigned Big Run a hypothetical capital structure composed of 53% debt and 47% equity[2] for the purpose of computing a hypothetical interest expense $32,896 in excess of the figure proposed by Big Run. This adjustment, in turn, reduced Big Run's allowable tax expense, and hence decreased

---

[2] These percentage figures, which were proposed by the P.U.C. trial staff, represent the average debt-equity ratio of the 42 smallest independent Pennsylvania telephone companies besides Big Run.

allowable revenues,[3] by $16,372. The present appeal followed.

In rate cases, our scope of review is limited "to a determination of whether constitutional rights have been violated, an error of law committed, or whether findings, determinations and order of the Commission are supported by substantial evidence." *Park Towne v. Pennsylvania Public Utility Commission*, 61 Pa. Commonwealth Ct. 285, 289, 433 A.2d 610, 613 (1981).

Here, Big Run alleges, citing our decisions in *Blue Mountain Consolidated Water Company v. Pennsylvania Public Utility Commission*, 57 Pa. Commonwealth Ct. 363, 426 A.2d 724 (1981), *T.W. Phillips Gas & Oil Co. v. Pennsylvania Public Utility Commission*, 50 Pa. Commonwealth Ct. 217, 412 A.2d 1118 (1980), and *Bell Telephone Company v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 614, 408 A.2d 917 (1979), that the P.U.C. erred as a matter of law by utilizing an interest expense figure based on a hypothetical capital structure for the purpose of computing allowable tax expenses. We disagree.

Initially we note that we do not believe that the cases cited by Big Run stand for the proposition that an interest expense may *never* be computed on the basis of a hypothetical capital structure.

In *Bell*, Bell Telephone of Pennsylvania (Bell), a subsidiary of A.T. & T., filed a tariff supplement with the P.U.C. proposing an increase in its rates. In computing the tax expense component of this proposed rate increase, Bell claimed as an interest ex-

---

[3] Income tax liability is an operating expense for which ratepayers are liable. *Carnegie Natural Gas Co. v. Pennsylvania Public Utility Commission*, 61 Pa. Commonwealth Ct. 436, 433 A.2d 938 (1981).

pense the actual interest payments it had paid on debt which it, and not its parent, had issued. Following an investigation, the P.U.C. revised this figure by assigning to Bell a portion of the interest expenses of its parent, A.T. & T. In reversing this adjustment on appeal, we did not hold, as Big Run suggests, that hypothetical interest expenses may not be used for the purpose of computing allowable tax expenses, but instead noted that

> the disallowance of an actual tax expense [is] improper absent evidence:
>
> (1) That A.T. & T.'s debt is a surrogate for or supplement to Bell of Pennsylvania's financing.
>
> (2) That managerial discretion is exercised with the purpose and effect of arranging the capital structure of the parent so as to require Bell's subscribers to pay higher rates to meet taxes and of affording the parent greater tax deductions.
>
> (3) That Bell has not been afforded its fair share of tax benefits of filing a consolidated tax return.

*Id.* at 619, 408 A.2d at 921-922. We then noted that the P.U.C. had failed to base its decision on a finding that A.T. & T. had abused its managerial discretion in arranging its capital structure, but instead based its adjustment on the assumption that a portion of Bell's equity was financed by A.T. & T. debt, an assumption we subsequently found to be unsupported by the evidence of record *in that case.*

Thereafter, in *Phillips* and *Blue Mountain* we were confronted with appeals from P.U.C. orders which, *inter alia,* made interest expense adjustments based on hypothetical capital structures. In revers-

ing these adjustments on appeal, we once again did not rule that hypothetical interest expenses could not be used for the purpose of computing allowable tax expenses, but instead noted that actual tax expenses had to be offset by revenues *"unless* the Commission finds that in abuse of its discretion, management has arranged the capital structure with the purpose and effect of imposing an unfair burden of tax expense on the regulated utility." *Blue Mountain* at 368, 426 A.2d at 726 (emphasis added). We then noted, in each case, that the P.U.C. had failed to raise the issue of abuse of managerial discretion below, and that the record in each case failed to support such a finding.

Although, in our view, our decisions in each of the above cases did not preclude the use of a hypothetical interest expense for the purpose of computing allowable tax expenses, any doubts on this issue were recently laid to rest by our decision in *Carnegie Natural Gas Co. v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 436, 433 A.2d 938 (1981). In *Carnegie* we affirmed the P.U.C.'s use of an interest expense based on a hypothetical capital structure[4] for the purpose of calculating allowable tax expenses in a rate case involving a utility, Carnegie Natural Gas Co. (Carnegie), which at the initiation of the proceedings in that case had a capital structure composed entirely of equity. In reaching this result, we noted that Carnegie's disproportionate capital structure was the sole cause of its high income tax expense, and that Carnegie had failed to meet *its burden,* under the provisions of Section 315(a) of the Public Utility Code,[5]

---

[4] In *Carnegie* the P.U.C. utilized a hypothetical capital structure comprised of 55% debt and 45% equity.

[5] 66 Pa. C. S. §315(a).

of establishing the reasonableness of its actual tax expense.

Accordingly, we believe that the P.U.C. may utilize a hypothetical interest expense for the purpose of computing allowable interest expenses where it finds that management has abused its discretion by adopting a disproportionate capital structure. Additionally, we believe that such an abuse is established where the evidence indicates that management has adopted a capital structure, in the absence of some compelling business reason, which because of its disproportionate nature imposes an unfair tax burden on ratepayers.

Applying the above law to the facts of this case, we believe that the P.U.C.'s interest expense adjustment must be sustained. Here, the record clearly shows that management adopted a capital structure composed entirely of equity which, because of its disproportionate nature, had an adverse impact on Big Run's tax expenses. The record further shows that the average capital structure of the 42 smallest independent Pennsylvania telephone companies besides Big Run was comprised of 53% debt and 42% equity.

After carefully reviewing the record in this case, we also note that Big Run has failed to advance any compelling business reason for its disproportionate capital structure. Although Big Run asserts in its brief that Citizen's, because of large size, could issue debt more inexpensively than Big Run, such an assertion does not, in our view, answer the question of why Big Run's capital structure must be composed entirely of equity since the capital Citizen's raises through the issuance of debt could just as easily be used to purchase debt issued by Big Run as it currently is used to finance the acquisition of Big Run's equity.

303

Accordingly, we will enter the following

ORDER

Now, August 12, 1982, the order of the Pennsylvania Public Utility Commission, dated April 3, 1981, is hereby affirmed.

Judge MENCER did not participate in the decision in this case.