739 P.2d 360

In the Matter of the Application of CITIZENS UTILITIES COMPANY for an Order Approving Revised Rates and Charges for Electric Service in the State of Idaho.

CITIZENS UTILITIES
COMPANY, Appellant,

v.

IDAHO PUBLIC UTILITIES
COMMISSION, Respondent.

No. 16457.

Supreme Court of Idaho.

June 4, 1987.

Kenneth Bergquist, Boise, and John H. Engel (argued), Stamford, Conn., for appellant.

Jim Jones, Atty. Gen., and Donald L. Howell, II (argued), Deputy Atty. Gen., Boise, for respondent.

BISTLINE, Justice.

Citizens Utilities Company (Citizens), a corporation headquartered in Connecticut, provides electricity to the Wallace, Idaho area through its Idaho Electrical Division. The Idaho division of Citizens is not a separate utility—rather it is a division of a Connecticut corporation which operates both utility and non-utility property in other states. On June 20, 1985, Citizens filed an application for an increase in its rates and charges. Following a suspension of the effective date of the proposed rate increase, the Commission, on January 31, 1986, issued an order granting a rate increase of approximately 40 percent of the amount requested. A petition for reconsideration was filed by Citizens on February 20, 1986.

Citizens protests the Commission's use of a hypothetical capital structure to calculate the revenue requirement for Citizens. Citizens proposed the use of the actual capital structure of 73 percent equity and 27 percent debt. The Commission staff recommended a hypothetical capital structure of 45 percent equity and 55 percent debt, asserting a debt/equity ratio of 27/73 is not an appropriate capital structure for an electric utility. The Commission actually adopted a hypothetical capital structure of 50 percent debt and 50 percent equity. The capital structure and weighted costs are utilized to calculate a required rate of return of eleven percent as per the following computation:

| Component | % of Total | Capital Cost | Weighted Cost (1) × (2) |
|---|---|---|---|
| Long-Term Debt | 50.0% | 9.55% | 4.78% |
| Common Equity | | | |
|   Series A | 42.0% | 12.30% | 5.16% |
|   Series B | 8.0% | 13.30% | 1.06% |
| Total | 100.0% | | 11.00% Rate of return |

The adoption of a 50–50 hypothetical capital structure results in a hypothetical interest expense, which, due to the larger debt ratio, is greater than the actual interest expense. This in turn results in an adjustment of Citizens' income tax and net income figures, which in turn results in a revenue requirement of $23,563 less than would be required were a hypothetical capital structure not utilized.[1] Citizens argues

---

1. The figure of $23,553 was arrived at by multiplying the $11,627 adjustment by the revenue conversion factor of 2.0266.

this reduction in revenue requirement is arbitrary and unsupported by the evidence in the record. This appeal followed the denial of Citizens' petition for reconsideration.

The issue on appeal is whether the Commission erred in adopting a hypothetical capital structure rather than utilizing an actual capital structure where the utility is a division of a parent company which also owns and operates non-utility properties and utility properties in other states.

As with other cases reviewing the orders of the Commission, the scope of review is limited to a determination of "whether the Commission has regularly pursued its authority" and whether the constitutional rights of the appellant have been violated by the actions of the Commission. I.C. § 61–629; *Utah Power & Light Co. v. Idaho Public Utilities Commission*, 102 Idaho 282, 629 P.2d 678 (1981).

To determine whether the Commission has regularly pursued its authority, the Court must decide if the Commission acted arbitrarily when it adopted a hypothetical interest expense. The Commission's order and findings must be supported by competent and substantial evidence. *Intermountain Gas Co. v. Idaho Public Utilities Commission*, 97 Idaho 113, 540 P.2d 775 (1975); *Boise Water Corp. v. Idaho Public Utilities Commission*, 97 Idaho 832, 555 P.2d 163 (1976).

Citizens alleges that the Commission's adoption of the fictitious interest was arbitrary, first, as a departure from past rulings of the Commission. In previous cases, the Commission utilized hypothetical capital structures in calculating the rate of return, but utilized the actual interest expense and not a hypothetical interest expense. This departure, in and of itself, is not an arbitrary act on the part of the Commission.

"[A]n agency must at all times be free to take such steps as may be proper in the circumstances irrespective of its past decisions. Even when conditions remain the same, the administrative understanding of those conditions may change, and the agency must be free to act." So long as the Commission enters sufficient findings to show that its action is not arbitrary and capricious, the Commission can alter its decisions. *Washington Water Power Co. v. Idaho Public Utilities Commission*, 101 Idaho 567, 579, 617 P.2d 1242, 1254 (1980) (quoting 2 Davis Administrative Law Treatise § 18.09 at 610 (1958)).

This Court has affirmed the Commission's previous orders adopting a hypothetical capital structure. *General Telephone Co. v. Idaho Public Utilities Commission*, 109 Idaho 942, 712 P.2d 643 (1986); *Citizens Utilities Co. v. Idaho Public Utilities Commission*, 99 Idaho 164, 579 P.2d 110 (1978); *Petition of Mountain States Telephone & Telegraph Co.*, 76 Idaho 474, 284 P.2d 681 (1955).

The rationale for adopting a hypothetical capital structure is either the need to impute a parent's capital structure onto a subsidiary as in *General Telephone* or an attempt by the Commission to counter the effect of an equity-thick utility as in *Citizens*, 99 Idaho at 173–74, 579 P.2d at 119–20. Both of these rationales have as the Commission's purpose the achievement of a

| | Company | Commission | Adjustment (2–1) |
|---|---|---|---|
| Rate Base | $972,077 | $914,049 | |
| Weighted Cost of Debt | × 2.11% | × 4.78% | |
| Interest Expense | $ 20,511 | $ 43,692 | |
| Federal Tax Effect (42.455%) | 8,708 | 18,500 | 9,842 |
| State Tax Effect (7.70%) | 1,579 | 3,364 | 1,785 |
| Total Income Tax Adj. | | | $11,627 |

proper balance between the interests of the utility investor and the utility ratepayer.

"Perhaps the ultimate authority for imputing debt when necessary to protect ratepayers from excessive capital charges is the Supreme Court's statement in *Federal Power Commission v. Hope Natural Gas* that: "The ratemaking process under the Act, i.e., the fixing of 'just and reasonable' rates, involves a balancing of the investor and consumer interests." 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944). The equity investor's stake is made less secure as the company's debt rises, but the consumer ratepayer's burden is alleviated. It is these conflicting interests that the Commission is to reconcile." *General Telephone, supra,* 109 Idaho at 948, 712 P.2d at 649, *citing accord General Tel. Co. v. Public Utility Commission,* 628 S.W.2d 832, 837 (Tex.App.1982). As described in *Communications Satellite Corp. v. Federal Communications Commission,* 611 F.2d 883 (D.C.Cir.1977):

> Ratepayers are subjected to an excessive burden when the revenues to be derived from the rates they pay have to be high enough to compensate the cost of a capital structure consisting entirely of equity financing; leveraging a capital structure with lower-costing debt relieves some of that burden. 611 F.2d at 902–03.

Citizens had a capital structure of approximately 73 percent equity compared to 27 percent debt. The Commission's response entailed adopting a 50–50 equity to debt capital structure noting: "In this case, the Company's [Citizens'] equity structure of 73.18% begs for close scrutiny. In fact, it is absurd on its face. This Commission has routinely adopted a hypothetical capital structure when it would be unfair to impose an unreasonably costly actual capital structure proposed by a utility."

The hypothetical interest expense was, in the words of staff witness Terry Carlock, the result when she "followed through to use a higher debt cost related to that hypothetical capital structure and it's appropriate to continue following through and using the interest related to that in figuring the interest cost to the Commission." While the exact calculations utilize derived numbers representing the weighted cost of debt and the rate of return, the end number used for the interest expense is based on the amount of debt in the capital structure.

If supported by sufficient evidence, the Commission adoption of a hypothetical interest expense based upon a hypothetical capital structure is within its power. We are in agreement with the Commonwealth Court of Pennsylvania which faced a similar issue in *T.W. Phillips v. Pennsylvania Public Utilities Commission,* 81 Pa. Cmwlth. 205, 474 A.2d 355 (1984); and *Carnegie Natural Gas v. Pennsylvania Public Utilities Commission,* 61 Pa.Cmwlth. 436, 433 A.2d 938 (1981). In both cases it upheld the commission's adoption of the hypothetical interest expense.[2] The commission in *T.W. Phillips* adopted a hypothetical capital structure due to the "atypical" nature of Phillips' capital structure. Based upon this hypothetical capital structure, the commission imputed an income tax expense which was substantially lower than Phillips' actual tax expense. The court stated:

> [T]he Commission may, for ratemaking purposes disallow a utility's actual income tax expense and impute an income tax expense based upon a hypothetical

---

**2.** This adoption is not, as interpreted by the dissent, predicated upon a finding of an abuse of management discretion. In *Carnegie,* the court discussed the commission's finding of the *unreasonableness* of the utility's capital structure. In *T.W. Phillips* the court stated: "Having found that a hypothetical capital structure was appropriate for Phillips, the Commission was free to use it as the basis for imposing a hypothetical income tax expense without having to find that Phillips management had abused its discretion." 474 A.2d at 362.

Even going so far as to require a finding of abuse of discretion may impose no greater burden. *Big Run Telephone Co. v. Pennsylvania Public Utility Commission,* 68 Pa.Cmwlth. 296, 449 A.2d 86 (1981), states: "An abuse is established when the evidence indicates that management has adopted a capital structure, in the absence of some compelling business reason, which because of its disproportionate nature imposes an unfair tax burden on ratepayers."

capital structure when a utility's atypical capital structure causes it to incur substantially higher income taxes than it would were its capital structure arranged in a more typical fashion. _Id._ 433 A.2d at 362 _citing Carnegie, supra._

The Commission here was faced with a similar suspect capital structure and adopted the hypothetical capital structure. As in _Phillips,_ Citizens' capital structure would incur a lower interest expense and higher income tax than the Commission's more appropriately balanced structure.

■ Citizens argues a distinction should be made between the use of the hypothetical capital structure in calculating the rate of return and calculating the interest expense. Citizens' position is that the effect of the hypothetical interest expense is to act as an improper adjustment to the rate of return. Citizens argues that since the actual interest expense is the amount allowable as a deduction from income taxes, a larger hypothetical interest expense creates an artificially lower income tax resulting in the rates being insufficient to recover the actual existing higher taxes.

This argument, however, is unpersuasive when viewed in light of our previous rulings on the adoption of a hypothetical capital structure. The Commission was well within its discretion when it calculated a rate of return based on this capital structure. The effect of following through the cost of the debt to the interest expense is to complete the adoption of the capital structure, the Commission noting that "to fail to carry the effect of the capital structure through to the company's [Citizens'] results of operations would be inaccurate and would result in an inadequate revenue requirement."

■ Citizens next argues that the Commission's adoption of the hypothetical interest expense was not supported by sufficient evidence. The sufficiency of evidence on review to support the Commission's decision was recently stated as requiring

more than a mere "scintilla" of evidence in support of the agency's determination, _id._ [_Local 1494 of the International Association of Firefighters v. City of Co-_

_eur d'Alene,_ 99 Idaho 630] at 634, 586 P.2d [1346] at 1350 [1978], though "something less than the weight of the evidence." _Consolo v. FMC,_ 383 U.S. 607, 620 [86 S.Ct. 1018, 1026, 16 L.Ed.2d 131] (1966). "Put simply," we wrote, "the substantial [competent] evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.' 4 Davis, Administrative Law Text § 29.01–02 at 525–530." _Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,_ 99 Idaho 630, 634, 586 P.2d 1346, 1350 (1978). _Application of Hayden Pines Water Co.,_ 111 Idaho 331, 335, 723 P.2d 875, 879 (1986).

The record reveals testimony from both the Commission staff and Citizens' witnesses on the adoption of the interest expense as well as staff exhibits illustrating the effect of the interest expense. Staff Ex. No. 105 showed the proposed adjustment to Citizens' interest deduction for income tax purposes and Staff Ex. No. 109 showed the calculation of the adjustment, based on the staff recommended hypothetical capital structure. The amount of evidence available to the Commission was limited, but this was due in part to Citizens' own failure to directly address the issue of the hypothetical interest expense. The evidence the Commission did have came from both sides and presented the origin and effect of the interest expense:

In reviewing findings of fact we will sustain a Commission's determination unless it appears that the clear weight of the evidence is against its conclusion or that the evidence is strong and persuasive that the Commission abused its discretion. _Utah-Idaho Sugar v. Intermountain Gas Co.,_ 100 Idaho 368, 376, 597 P.2d 1058, 1064 (1979).

There is substantial, competent evidence to support the Commission orders which are hereby affirmed. Costs to respondent; no attorney's fees awarded.

DONALDSON and HUNTLEY, JJ., concur.

BAKES, Justice, concurring specially:

The Court's opinion correctly notes that, "This Court has affirmed the Commission's previous orders adopting a hypothetical capital structure," citing *General Telephone Co. v. Idaho Public Utilities Commission*, 109 Idaho 942, 712 P.2d 643 (1986); *Citizens Utilities Co. v. Idaho Public Utilities Commission*, 99 Idaho 164, 579 P.2d 110 (1978); *Petition of Mountain States Telephone & Telegraph Co.*, 76 Idaho 474, 284 P.2d 681 (1955). By these cases, this Court has approved the commission's adjustment of a utility's actual costs of debt and equity to reflect the hypothetical capital structure approved by the commission. The effect of this has been in these cases to reduce the amount of return on equity resulting from the altered hypothetical capital structure. While today's opinion may merely be carrying the hypothetical capital structure to its logical extreme by also adjusting the deduction for federal income taxes paid, the cases cited in the dissent correctly point out that it may well result in an unreasonable impairment of the right of a utility to receive a fair return on its investment.

I write only to express my concern that the same logical analysis, used to justify the extension of the hypothetical capital structure to the allowance for federal income taxes paid, may not be applied when the utility is under-capitalized, rather than over-capitalized. Thus, where a utility does not have adequate equity in its debt-equity ratio, as was the case in *Intermountain Gas Co. v. Idaho Public Utilities Comm'n*, 97 Idaho 113, 540 P.2d 775 (1975), the commission should logically adopt a similar 50–50 hypothetical capital structure for such a utility, increasing the equity and proportionately reducing the debt, which would, in most cases, not only increase the utility's rates in order to provide a return on the increased hypothetical equity, but also increase the utility's rates in order to reflect the higher federal income tax expense which would have resulted from the lower interest expense deduction for federal income tax attributable to the reduced hypothetical debt structure. If the commission's practice of adopting a hypothetical capital structure is going to be applied evenhandedly, it should be applied to the benefit of those utilities which have an under-capitalized equity structure, as well as to the detriment of those which have an over-capitalized equity structure, as in the present case. If the commission applies today's rule to the benefit of under-capitalized utilities as well as to the detriment of over-capitalized utilities, then the Court's decision in this case is arguably reasonable and fair. However, if the commission only applies this hypothetical capital structuring rule to the detriment of those utilities which have an excess equity capital structure, but not to the benefit of those utilities which have an inadequate equity capital structure, then they have merely created another "one-way street," *Washington Water Power Co. v. Idaho Public Utilities Comm'n*, 105 Idaho 276, 668 P.2d 1007 (1983) (Bakes, J., concurring in the judgment, at page 284, 668 P.2d 1007), and I would then concur with the conclusion of Chief Justice Shepard in his dissent that such an action is arbitrary, capricious, and an abuse of discretion on the part of the commission which would amount to a taking of the utility's property without payment of just compensation.

SHEPARD, Chief Justice, dissenting.

I cannot agree with the conclusion reached by the majority opinion, and hence dissent. Although the amount of money involved and in dispute here is not large, the principle is significant. The core of the issue is the Commission's treatment of interest expense of the company, and tax savings which would result therefrom.

In my view, the majority correctly points out the facts, but fails to engage in any substantial analysis, but rather relies upon a Pennsylvania case which I believe is distinguishable from the instant action. Although the majority cosmetically utilizes the substantial evidence rule, it overlooks any analysis of the principle involved.

As noted by the majority, the Commission concluded that for ratemaking purposes in determination of a fair rate of return, the company's capital structure was

overweighted on the equity side, and that the Commission would utilize an equity 50 percent and debt 50 percent ratio. That process has been approved by this Court in past cases. *See General Telephone Company of the Northwest, Inc. v. Idaho Public Utilities Commission,* 109 Idaho 942, 712 P.2d 643 (1986), and *Citizens Utilities Company v. Idaho Public Utilities Company,* 99 Idaho 164, 579 P.2d 110 (1978). The Commission then took for the first time a further step, which has not been previously considered by this Court, of calculating a hypothetical interest expense based upon the hypothetical capital structure. Since that hypothetical capital structure was more heavily weighted toward debt, the hypothetical interest expense was larger, which theoretically would have resulted in a different income tax impact than that actually sustained by the company. Thus, in my view the Commission erroneously substituted its hypothetical view of costs for the actual costs incurred by the company.

The only cases cited by the majority in support of the Commission's action here are those where a commission specifically found that a utility had consciously abused its management discretion in adopting a disproportionate capital structure. My view of the record demonstrates no such finding or conclusion of the Commission in the case at bar, but rather a continual recitation that the Commission and its staff are not purporting to intrude upon management's authority and discretion relating to the capital structure of the company. Hence, the cases cited by the majority for its position are not applicable in the case at bar.

The decisions of the United States Supreme Court establish the minimum due process requirements for state regulation of utility rates. *See Smyth v. Ames,* 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819 (1898). In *Bluefield Water Works & Improvement Co. v. Public Service Commission of West Virginia,* 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923), the court set guidelines for determining a rate of return, which were further refined in *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). In *Hope,* the Court stated:

From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock. (Citation omitted). By that standard the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital. (Citation omitted). The conditions under which more or less might be allowed are not important here. Nor is it important to this case to determine the various permissible ways in which any rate base on which the return is computed might be arrived at. For we are of the view that the end result in this case cannot be condemned under the Act as unjust and unreasonable from the investor or company viewpoint.

*Smith, Bluefield,* and *Hope* make clear that the primary objective in ratemaking is to allow the utility to meet its legitimate operating expenses, as well as to pay creditors, provide dividends to shareholders, and maintain its financial integrity so that it might attract new capital.

In a case essentially similar to the case at bar, the Ohio court in *General Telephone Company v. Public Utilities Commission,* 174 Ohio St. 575, 191 N.E.2d 341 (1963) held, contrary to the conclusion of the majority here, that only the actual, rather than the hypothetical, interest should be considered, stating:

This position is equally untenable. There is no tax advantage because the federal income tax law does not permit the deduction of hypothetical interest in computing income tax. The federal law allows only for the deduction of only the amount of interest actually paid. To argue that this is a tax advantage is to assert in simple words that it is a tax advantage for a company to be allowed

as expense for income taxes an amount less than the amount of taxes which it is actually required to pay under the law. It is evident that there is no tax advantage here but rather a disadvantage which results in the appellant's annual dollar return to which it is entitled, being reduced arbitrarily and either its statutory rate base which has been determined and agreed upon being reduced arbitrarily and unlawfully, or the annual fair rate of return which the commission has held it is entitled to receive being reduced arbitrarily and unlawfully.

Likewise, the Indiana court in *Indiana Public Service Commission v. Indiana Bell Telephone Company*, 235. Ind. 1, 130 N.E.2d 467 (1955), held that although the commission had assumed a hypothetical capital structure, it was improper to determine the utility's income tax liability on that basis, stating:

This had the effect of depriving appellee of that amount of income to which it was entitled. Appellants cannot arbitrarily disallow federal taxes which appellee had paid or was obligated to pay by assuming a tax savings under a capital structure which did not exist. This action was both arbitrary and unlawful.

In the case of *In re Kauai Electric Division of Citizens Utilities Company*, 30 PUR4th 299 (1979), it is stated:

The county's proposal to increase the interest expense associated with hypothetical debt component to reduce that amount of income taxes to be allowed, cannot be allowed. The reason the county's proposal is not accepted is because its proposal not only creates a fictitious income tax liability which reduces the income tax expense and revenue requirements, but after the rates are placed into effect it also reduces the income available for earning a fair return because the income tax liability is substantially higher than that allowed in the rates. In effect then the rates are designed so that the company does not have an opportunity to earn a fair return. We conclude that the county's proposal is unreasonable and cannot be allowed. We further noted that the courts have always declared such a procedure as that proposed by the county and adopted by the consumer advocate to be inappropriate whenever a commission has attempted to follow it. (Citations omitted.)

The company had prior cases before the Commission, in 1980 and 1983.[1] In the 1980 case the Commission staff had recommended that a hypothetical interest derived from a hypothetical capital structure be utilized by the Commission, but the Commission recognized the impact that such a hypothetical interest expense would have upon income taxes and rejected the staff's recommendation.

As noted above, certain Pennsylvania cases have permitted the use of a hypothetical interest expense. *See T.W. Phillips Gas and Oil Co. v. Pennsylvania Public Utility Commission*, 81 Pa.Cmwlth. 205, 474 A.2d 355 (1984); *Big Run Telephone Company v. Pennsylvania Public Utility Commission*, 68 Pa.Cmwlth. 296, 449 A.2d 86 (1982); *Carnegie Natural Gas Company v. Pennsylvania Public Utility Commission*, 61 Pa.Cmwlth. 436, 433 A.2d 938 (1981). However, as made clear in *T.W. Phillips Gas and Oil Co. v. Pennsylvania Public Utility Commission*, 50 Pa. Cmwlth. 217, 412 A.2d 1118 (1980), even in Pennsylvania the commission's use of a hypothetical interest expense is not permitted absent a showing of an abuse of management discretion in adopting a capital structure.

In sum, while the Commission may adopt a hypothetical capital structure for a utility for certain ratemaking purposes, neither it nor the utility may wave a magic wand and in an instant convert a utility's capital structure into a hypothetical nonexistent capital structure. Likewise, a commission may not make an actual expense of a utility disappear by theorizing that a hypothetical capital structure would have yielded a dif-

---

1. Case U–1007–34, Order # 15330 (Feb. 20, 1980), 34 PUR 4606 (1980); Case U–1007–45, Order # 17915 (Feb. 28, 1983).

ferent hypothetical interest expense, and therefore income tax treatment would have been different than actuality. In my view there is no support for the Commission's conclusion and decision in this case, and hence it is arbitrary and must be reversed.