[S. F. No. 9543.  In Bank.—January 27, 1921.]

HARTLAND LAW, Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] PUBLIC UTILITY—FIXING RATES FOR SERVICE—POWER OF STATE.— The state has the power without impairing the obligation of a contract or depriving of property without due process of law to fix rates for a public utility service which will supersede rates for such service previously fixed by private contract between the con-

---

1. Power of state to change private contract rates for public utilities, note, 9 A. L. R. 1423.

sumer and the company, and it is immaterial that such a contract was entered into prior to the exercise of such police power.

[2] ID.—ORDER FIXING RATES FOR STEAM-HEATING SERVICE—REFERENCE TO FINDINGS IN ANOTHER PROCEEDING — SURPLUSAGE.—An order of the Railroad Commission fixing rates to be charged by a public utility corporation for steam-heating service is not vitiated by reference in the order to findings made in another proceeding prescribing rates for a different corporation, where the reference was made only by way of amplification and nothing appeared to suggest that the proceeding in question was not independent and complete in itself.

[3] ID.—PRIVATE CONTRACT BETWEEN CONSUMER AND COMPANY—GRANT OF PRIVILEGES—COMPENSATION FOR SERVICE VIOLATIVE OF PUBLIC UTILITIES ACT.—In view of section 17 (b) of the Public Utilities Act (Stats. 1919, p. 488), providing that no public utility shall receive a greater or less or different compensation than the rates fixed by the Railroad Commission, a contract between a consumer and a public utility company wherein the company was granted certain privileges in the use of the consumer's property in part payment for service, fixed a "different" compensation, and the commission was not required to receive evidence as to the value of such privileges in order to determine whether the rates fixed by the contract were discriminatory.

[4] ID.—RESCISSION OF PRIVATE CONTRACT—RIGHT OF CONSUMER.—A contract between a consumer and a public utility corporation for the furnishing of steam heat at certain rates and in consideration of certain privileges in the use of the consumer's property is subject to rescission by the consumer upon the fixing of rates for such service by the Railroad Commission in excess of those provided by the contract, and the consumer may prevent the further exercise of such privileges except for compensation properly determined.

PROCEEDING in Certiorari to review an order of the Railroad Commission fixing rates for steam-heating service. Order affirmed.

The facts are stated in the opinion of the court.

Alexander McCulloch for Petitioner.

Hugh Gordon for Respondent.

LENNON, J.—The questions in this case are before this court as the result of an order to show cause in response to a petition for a writ directing a·review of an order of the

Railroad Commission alleged to be violative of certain constitutional rights of petitioner.

In May, 1910, the petitioner and one Frederick G. Cartwright entered into a written contract, for a period of twenty years, whereby said Cartwright agreed to furnish steam and electricity for purposes of heating, power, and illumination in a building in the city of San Francisco owned by petitioner. The commodities furnished were to be paid for by petitioner at certain rates set forth in the contract and, in addition, Cartwright was granted the right to use free of charge parts of said building and premises belonging to petitioner. The right thus granted included the privilege of using certain wells, a smokestack, a steam and water circuit extending from said building under the streets of the city to another building, and the right of constructing and maintaining tanks on the roof of the building and of installing and maintaining motors, pumps, and pipes in the basement of the building. Cartwright assigned this contract to the Great Western Power Company. Subsequent to the assignment the present Railroad Commission of the state of California was created, the Public Utilities Act of 1915 was passed, and the Great Western Power Company, considered as a corporation furnishing heat, became a public utility under said act. In May, 1920, the Railroad Commission made an order wherein it directed that all steam-heating consumers should be charged upon a uniform basis for heating service, approved certain schedules of rates for steam-heating service, and, in effect, prohibited deviations from said schedule under existing contracts providing different rates. Petitioner complains of this order is so far as it affects his rights under his contract.

[1] There is no longer any question as to the power of a state to fix rates for a public utility service which will supersede rates for such service previously fixed by private contract between the consumer and the company. It has been conclusively settled that the interference with private contracts by the state regulation of rates is but a legitimate effect of a valid exercise of the police power which neither impairs the obligation of a contract nor deprives of property without due process of law. (*Atlantic Coast Line Ry. Co.* v. *Goldsboro*, 232 U. S. 548, 558, [58 L. Ed. 721, 34 Sup. Ct. Rep. 364, see, also, Rose's U. S. Notes]; *Union Dry Goods Co.* v.

*Georgia Public Service Corp.,* 248 U. S. 372, [9 A. L. R. 1420, 63 L. Ed. 309, 39 Sup. Ct. Rep. 117]; *Southern Pac. Co.* v. *Spring Valley Water Co.,* 173 Cal. 291, [L. R. A. 1917E, 680, 159 Pac. 865]; *Limoneira Co.* v. *Railroad Com.,* 174 Cal. 232, [162 Pac. 1033].) It is immaterial that petitioner's contract was entered into prior to the enactment of the present Public Utilities Act and the amendment thereto by which steam-heating service was included as a utility to be regulated. If the service contracted for was devoted to public use (*Allen* v. *Railroad Com.,* 179 Cal. 68, [8 A. L. R. 249, 175 Pac. 466]), the contract for the service was subject to the exercise of the police power and, the state having elected to confer upon the commission the power to prescribe uniform rates for the service, petitioner cannot complain if the exercise of this power results in the practical annulment of his private contract fixing compensation for a public service. (*Producers' Transp. Co.* v. *Railroad Com.,* 251 U. S. 228, [64 L. Ed. 239, 40 Sup. Ct. Rep. 131].)

[2] Petitioner raises the objection that the opinion and order of the commission refer to findings made in another proceeding. The proceeding referred to was one in which an order was made prescribing rates for the Pacific Gas & Electric Company and prohibiting departures therefrom under private contract. This reference was made only by way of amplification for the purpose of indicating the attitude of the commission in a previous parallel case. Nothing appears to suggest that the present proceeding was not independent and complete in itself or that the conclusion of the commission was not based solely upon the facts presented therein. The substance of the opinion and order in the present case is that certain rates are found and declared to be just, fair, and reasonable charges for steam-heating service by the Great Western Power Company and such rates are accordingly prescribed for all consumers. The reference complained of does not affect the substance of the order and, being superfluous, it cannot vitiate the order. (Civ. Code, sec. 3537.)

[3] It is pointed out that there was no evidence before the commission as to whether the rates provided by petitioner's contract, when considered with the grant of privileges in the use of petitioner's property, were in fact discriminatory. Under section 17 (b) of the Public Utilities

Act (Stats. 1919, pp. 488, 496), it is provided that no public utility shall receive "a greater or less or different compensation" than the rates fixed by the commission. The same section provides that the commission may establish such exceptions from the operation of this prohibition as it may consider just and reasonable. It appears from the face of petitioner's contract that the compensation provided therein is "different" from that fixed by the commission. It was, therefore, unnecessary for the commission to receive evidence as to the value of the privileges granted by petitioner in order to determine the amount of the rate fixed by the contract. It is not essential that a rate be greater or less in amount in order to be discriminatory; a difference in character of payment, such as the granting of privileges or concessions, may in itself give just such advantages as the act is designated to prevent. The contract did, in fact, fix a "different" compensation than that prescribed by the commission. It therefore came within the general prohibition of the Public Utilities Act and the commission was not obliged to receive further evidence in order to determine whether or not an exception should be made.

[4] Having disposed of this point, for we deem it unnecessary to say more in regard thereto, there remains the claim of petitioner that, if the Great Western Power Company is to retain its right given by the contract to use agencies and appliances belonging to him, the order will operate to deprive plaintiff of the use of his property without compensation and, by compelling him, in effect, to pay a higher rate than other consumers, create the discrimination it purports to abolish. If the order attempted to change the rate paid by petitioner and, at the same time, give the power company the right to continue to use the agencies and appliances of petitioner under the contract, then it would, indeed, exceed the jurisdiction of the commission by depriving petitioner of his property without compensation and due process of law. This, however, is not the effect of the order, which simply does what the law permits, namely, fixes the rates to be paid by the consumer, and, therefore, nullifies the compensation fixed by the contract. It follows, of course, in view of the change effected by the order in such an important part of the contract, that petitioner will have the right under the law to rescind the contract, and prevent fur-

ther use of his property by the former company, except for compensation properly determined. (See *Newport* v. *Temescal etc. Water Co.*, 149 Cal. 538, [6 L. R. A. (N. S.) 1098, 87 Pac. 372]; *Miller & Lux* v. *Enterprise etc. Co.*, 169 Cal. 415, 426, [147 Pac. 567].)

The order to show cause is dismissed.

Angellotti, C. J., Shaw, J., Lawlor, J., Sloane, J., Olney, J., and Wilbur, J., concurred.