233 P.2d 1024

Application of PACIFIC TEL. & TEL. CO.

No. 7665.

Supreme Court of Idaho.

July 13, 1951.

Cox, Ware & Stellmon, Lewiston, Mc-Micken, Rupp & Schweppe, Seattle, Wash., for The Pacific Tel. & Tel. Co.

———◆———

Maurice H. Greene, Boise, for appellants.

Robert E. Smylie, Atty. Gen., & J. N. Leggat, Asst. Atty. Gen., for Public Utilities Commission.

KEETON, Justice.

The Pacific Telephone and Telegraph Company, a public utility, engaged in furnishing telephone service for hire in the states of California, Oregon and Washington, and in Nez Perce and Lewis Counties, and a portion of Idaho County, Idaho, hereinafter referred to as the Company, made application dated March 21, 1949, to the Public Utilities Commission of Idaho, hereinafter referred to as the Commission, for permission to increase certain of its rates for telephone service in the Idaho area served by the Company.

The Lewiston, Grangeville, Craigmont, Lapwai, Cottonwood, Kamiah and Kooskia Chambers of Commerce, and the Culdesac Grange, Lewis Valley Grange, and Lewiston Farmers Union appeared and protested the proposed increase.

The Commission held hearings on the matter which were concluded November 10, 1949. Thereafter, on January 14, 1950, the Commission entered its order No. 2024 granting the application. Petition for rehearing and reconsideration was filed by some of the protestants, appellants here. This petition was denied February 1, 1950. Appeal was taken from the original order granting the application and the order denying the petition for rehearing and reconsideration.

In the order appealed from, the Commission accepted the Company's book values in finding that the increase would give a return of 1.69% on the value of the Company's plant in Idaho, which was found to be $1,370,139—this figure being arrived at by finding that the valuation of the property used and useful is the sum of $1,929,093, less depreciation and amortization reserve of $675,121, leaving a value of $1,253,972, plus working capital of $116,167, making a total value, for rate making purposes, of Idaho properties, of $1,370,139.

The schedule of rates approved by the Commission will increase the Company's gross revenue by approximately $115,000 on its intrastate telephone service in Idaho. By increases sought before the Department of Public Utilities of Washington, in the area served by the Idaho exchange, a further sum of $30,000 would be raised in additional annual gross revenue.

480

The Commission was originally created by a legislative act, 1913 S.L. Chap. 61, p. 247, and the statute has, subsequent to that time, by various legislative acts, been supplemented and amended.

By authority granted, the Commission is given, under prescribed conditions and procedure, authority to investigate, supervise, regulate, fix and establish rates and rate schedules for public utilities, Sec. 61-503 I.C., and enforce nondescriminatory service which shall be just and reasonable. Sec. 61-301, 61-302 and 61-303 I.C.

Telephone service is a public utility within the meaning of the act, Sec. 61-121 and 61-129 I.C.

Orders of the Commission may be reviewed by the Supreme Court as provided for in Sec. 61-629 I.C., hearings in the Supreme Court being limited to a determination of whether the Commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellants under the Constitution of the United States or the State of Idaho.

■ The Commission is a fact finding body authorized to investigate and determine, in the first instance, the issues presented by the petition, and when its findings of fact are supported by competent, substantial evidence, such findings are binding on the Supreme Court. Conversely, conclusions made must be sustained by competent evidence. State ex rel. Taylor v. Union Pac. Railroad Co., 60 Idaho 185, 89 P.2d 1005.

■ Hence, if the raises approved in this proceeding before us and the schedule of charges fixed by the Commission are justifiable, Sec. 61-622 I.C., just and reasonable to the Company and the people served, and permit the Company to maintain adequate, efficient, just and reasonable service, Sec. 61-302 I.C., are nondiscriminatory, and do not establish *unreasonable* differences as to rates, charges and service between localities, or classes of service, Sec. 61-315 I.C., and if the rates fixed by the Commission are based on competent, substantial evidence to support the findings and conclusions made, Idaho Power & Light Co. v. Blomquist, 26 Idaho 222, 141 P. 1083, the same should be by this Court upheld.

In determining the issue presented, the Commission held extensive hearings and among other things found that the Company operated its Idaho property at a loss from 1940 to 1949, and that losses for 1946 were $70,990, for 1947, $44,840, and 1948, $58,051.

■ It is the duty of the Commission not only to fix just and reasonable, nondiscriminatory rates, but to see that adequate service is furnished and in fixing such rates to allow the utility furnishing the service to make a just and reasonable profit or return on its investment.

■ The main elements in fixing reasonable rates for service rendered by public

utility are the cost of rendering service on an economical and efficient basis, fair return to the utility on its property used and useful in such service and fairness to consumers. Mountain View Rural Telephone Co. v. Interstate Telephone Co., 55 Idaho 514, 46 P.2d 723; Boise Artesian Water Co. v. Public Utilities Commission, 40 Idaho 690, 236 P. 525.

By the provisions of Sec. 61–640 I.C. the Commission is required, in the determination of schedule of rates and charges, to hold a hearing, and among other things to be determined at such hearing, where rate schedules are involved, is the value of the property used and useful in furnishing the service of such utility.

With this brief analysis of the principle involved here, we will discuss the facts found by the Commission, the evidence on which such findings are based, and the assignments of error presented and argued by the appellants.

The first four assignments of error present the general contention that the schedule of rates approved is discriminatory as between classes of service, between communities and between interstate and intrastate service. These assignments are based on the contention that if the Company proved anything, it proved it was entitled to a percentage increase over former rate schedules, and that the increases, if any, for the securing of additional revenue should apply equally to all classes of service and all localities, and

further, that the method used by the Commission to increase the revenues of the Company violated Sec. 61–315 I.C.

The interpretation of Sec. 61–315 I.C. contended for by appellants is supported by no citation of authorities and our individual research has found no case supporting it.

This method (percentage increase) of fixing rate schedule for a public utility would, in many instances, be in itself discriminatory. Rates once established and fixed, regardless of changed conditions, or other factors, would thereafter have to be increased or decreased simply by a mathematical computation which in many instances would in itself result in an inequity, and be impractical in application.

The initiation of a rate schedule in the first instance is an attribute of management, and where such rate schedule so proposed does not violate some provision of the statute, or the Constitution, and is approved by the Commission, before it can be set aside by this Court, it must be shown to be unreasonable, unjust, arbitrary, or not supported by competent evidence.

In the case of United States v. Illinois Central Railroad Co., and Wyoming Railway Co. v. United States, 263 U.S. 515, 44 S.Ct. 189, 192, 68 L.Ed. 417, the Supreme Court of the United States held: "A carrier is entitled to initiate rates and * * adopt such policy of rate-making as to it seems wise." Any rate so made or initi-

482

ated, or asked for, is of course subject to the approval of the Commission. See City of Norfolk v. Chesapeake & Potomac Telephone Co. of Virginia, 192 Va. 292, 64 S.E.2d 772; Lowden v. Illinois Commerce Commission, 376 Ill. 225, 33 N.E.2d 430; Springfield Gas Light Co., 70 P.U.R. N.S. 82.

In Springfield Gas Light Co., supra, the theory of percentage increase was rejected.

We therefore conclude that Sec. 61–315 I.C. does not require a percentage increase over former schedules in fixing and determining a new rate schedule. We also call attention to the concluding paragraph of said section: "The commission shall have the power to determine any question of fact arising under this section."

Appellant next contends that an approval of a schedule of rates requires a valuation of the Company's property used and useful in the service.

The Commission did fix the value. It is the appellant's contention that the method used in so fixing the value of the Company's property conflicted with the method prescribed in Boise Artesian Water Co. v. Public Utilities Commission, supra, and Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819.

Prior to initiating the proceedings now being considered the Company had, in 1938, and thereafter, made application to the Commission for rate increases and at those hearings put in evidence the original cost of the property used and useful in rendering intrastate service in Idaho, replacement cost of such property, cost of reproduction, less depreciation; again in 1941 all factors of fair value, namely, original cost, replacement cost, cost of reproduction and cost of reproduction less depreciation were submitted. The record of the former hearings was received in evidence at this proceeding. The testimony there disclosed that as of December 31, 1946, it would cost $1,933,000 to build the Idaho property. The Company's book value at that time was $1,418,954.80, that is, approximately half a million dollars less than the reproduction cost. Thereafter the Commission adopted a formula for determining the rate base of public utilities as follows: the original cost of the property, plus material and supplies, plus working capital, less the allocation or actual amount of the depreciation reserve.

The Company, in making its application for increased rates in this proceedings, used the Commission's formula for fixing the value of the property, and fixed the basic value on which the rate should be allowed at a less amount than the replacement costs or original cost, less depreciation.

Further, the Company in submitting its case had already submitted evidence on all elements on the value required by the statute, and the Commission used the book value of the Company, shown conclusively to be less than it would have been had the

formula approved in Smyth v. Ames, supra, and Boise Artesian Water Co. v. Public Utilities Commission, supra, been used.

Whether the decision in Smyth v. Ames has been modified by subsequent cases is unnecessary to discuss. In considering a similar matter, in Boise Artesian Water Co. v. Public Utilities Commission, supra, this Court said: "While the question of the valuation of the property of utilities has been the subject of extended study by courts, commissions, and writers, no one rule or theory has been uniformly adopted as the correct rule, to the exclusion of all others, to fit all cases and changing conditions. Since the object to be attained in all valuation proceedings is the fair value of the property of the utility, used and useful, in the service to which it is devoted, it would appear to be a mistake to limit a Commission, in ascertaining and determining the ultimate fact, to any one rule or theory. It would be much better, in view of the practical problems facing the Commission, in every valuation proceeding, to require it to give fair consideration to all evidence relating to value, to the end that the final judgment of the Commission may be arrived at from a consideration of all the evidence available. * * * the Commission should require evidence relating to the cost of reproduction or replacement, actual cost, depreciation, earning capacity, present service condition, investment, the service furnished, and any and all other relevant evidence, so that its final judgment will be based on evidence bearing on cost and value in all their phases and relations, and the value found to exist will be determined from a careful consideration of all relevant facts, conditions, and circumstances." [40 Idaho 690, 236 P. 527.]

The Commission, in a former hearing, rejected offered testimony of reproduction cost and adopted the formula used here in determining the basic value on which the rate charges should be figured. It might be noted that because of the increased price of wages and material, a valuation which considers reproduction cost as the dominant element would be greater than a valuation derived solely from a consideration of the original costs less depreciation, plus working capital. All elements of value and factors to be considered were before the Commission for its determination.

The Company, having based its application for a rate increase in accordance with the Commission's formula, and the Commission having before it all the elements of original cost, cost of reproduction and other items necessary for a rate making basis, cannot be said to have erred when the value fixed in determining a just and reasonable return was based on the lesser amount. Alabama Public Service Commission v. Southern Bell Telephone and Telegraph Company, 253 Ala. 1, 42 So.2d 655.

One of the purposes of fixing base value is to prevent overcapitalization on which profits should be paid and it cannot be said that a higher value was fixed here than

484

the facts before the Commission warranted, and any other method suggested would have increased the basic value fixed by the Commission.

Hence the action and method used by the Commission in fixing the value of the Company's Idaho property did not prejudice the rights of the appellants. See City of Cincinnati v. Public Utilities Commission, 151 Ohio St. 353, 86 N.E.2d 10; Board of Supervisors of Arlington County v. Commonwealth ex rel. Chesapeake & Potomac Tel. Co., 186 Va. 963, 45 S.E.2d 145.

Assignments of error 5 to 12 inclusive challenge the correctness of the findings of the Commission that the increases were justifiable because the additional revenue that would be secured from the new schedule of rates would give a return of only 1.69% on the Company's investment as determined by the Commission, and in the assignment appellants assert that converting telephones to a dial system would result in a saving to the Company, thus permitting decreases in rate charges. Further that the telephone system operated by the Company in the area affected is obsolete.

The evidence before the Commission presented by the appellants does not show what the cost of installing or operating a dial system would be; whether the maintenance of such a system is more or less than the system now in use; or, whether or not new telephones and instal-

lation of a dial system would add to or decrease the basic value, and this Court is not in a position, from the record before us, to determine whether the system now in use is as economical as it might be. True it was shown that the cost per phone, dial system, used in Washington was less than the average cost of maintaining a phone in the area affected. What other conditions, elements or factors might enter the picture is not made clear.

What the advantages or disadvantages of a dial system might be, what increase or decrease of costs might ensue, are matters not before us for determination.

The Commission did not find that the system in use was inadequate or insufficient to supply the needs of the communities affected, nor is there any showing which would warrant the Commission in determining the system now in use obsolete.

Appellant contends that the Commission erred in considering matters not in evidence, in that comparisons were made by it between rates fixed for other rural farm lines and the rates here established. This comparison covered only a small part of the rate schedule, and is not shown in anywise to have ultimately determined the issue. The evidence on which the Commission based its order, while in conflict with some of the testimony of the protestants, was a matter to be evaluated by the Commission. The matter complained of does not affect the substance of

the order, being mainly surplusage. Law v. Railroad Commission of California, 184 Cal. 737, 195 P. 423, 14 A.L.R. 249.

Appellants complain that certain classes of service, namely, day time long distance calls and farmer owned telephone rates were not increased at all; that night long distance rates were, for some classes of users, increased; that the load of the increases was not proportionately distributed among all telephone users; that no fixed formula for increases was used. Sufficient answer to these contentions is that there was no discrimination between the groups or classes of users affected, and the classification to which the rate charges should apply is not shown to be arbitrary or unreasonable.

Complaint is made of the accounting method and depreciation charges which went into the losses found by the Commission to exist. The accounts of the Company were shown to be in accordance with the uniform system of accounts prescribed by the Federal Communications Commission, and which had been adopted by the Idaho Commission. The Company's depreciation accounts through the years, or some of the years, in which a loss was claimed were approved by the Commission, and are not shown to be not in accord with the uniform system of accounts and were found by the Commission to be allowable, and all the evidence and factors were presented and considered by the Commis-

sion. See Idaho Public Utilities Commission General Order #64.

Appellants complain of certain payments made by the Company to the American Telephone & Telegraph Company under a contract for service. No case has been called to our attention which held that this was not a proper cost of operation and this charge has been approved in numerous decisions. See Alabama Public Service Commission v. Southern Bell Telephone and Telegraph Company, supra; In re Northwestern Bell Telephone Company, S.D., 43 N.W.2d 553; certiorari denied Farmers' Union Educational Ass'n v. Northwestern Bell Tel. Co., 340 U.S. 934, 71 S.Ct. 489; State ex rel. Pacific Telephone and Telegraph Company v. Department of Public Service of Washington, 19 Wash.2d 200, 142 P.2d 498.

Findings and conclusions of the Commission are to be given the weight accorded any impartial tribunal, and its findings and conclusions should not be overturned unless against the clear weight of evidence, or in the absence of evidence, or other errors, or for some other lawful reason, or where constitutional rights are invaded. When the Commission acts within its jurisdiction and makes findings supported by substantial evidence, the order cannot be disturbed by this Court. We find no error warranting a reversal of the orders made. The orders are affirmed.

PORTER, TAYLOR and THOMAS, JJ., and GRAF, District Judge, concur.