James WHITE, Appellant,

v.

**ALASKA COMMERCIAL FISHERIES ENTRY COMMISSION, Robert Simon and John Williams, Commissioners of the Alaska Commercial Fisheries Entry Commission, Appellees.**

No. 6298.

Supreme Court of Alaska.

March 2, 1984.

Pamela Finley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

John B. Gaguine, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

James White applied to the Commercial Fisheries Entry Commission (CFEC) for a limited entry permit pursuant to the Alaska Limited Entry Act, AS 16.05.010–16.05.-

950.[1] The CFEC distributes entry permits for each fishery to those applicants who have the highest point totals. Points are awarded for items such as ownership of fishing gear or vessels, economic dependence on fishing, and past participation in the particular fishery. *See* AS 16.43.250(a). The burden is on the applicant to establish his or her qualification for a permit.[2] White failed to demonstrate to the Commission's satisfaction that he was entitled to points for economic dependence on the fishery. As a result, his application for a permit was denied. White appealed the denial to the superior court, which affirmed the Commission's decision. This appeal followed.

### I.

James White filed a timely application for a Southeast drift gill net entry permit in April 1975. He claimed that he was entitled to six points for income dependence in 1972. Economic dependence is determined by calculating the ratio of an applicant's "annual catch value"[3] to the sum of that value and all "nonfishing occupational income"[4] received in that year. The ratio is then converted to a percentage.[5] Under 20 AAC 05.630(b)(1), a drift gill net fisherman in Southeast Alaska must establish an "income dependence percentage" of 90% to receive six economic dependence points.

White valued his 1972 catch at $1,153.00 in his application for a permit.[6] His nonfishing occupational income would thus have had to have been less than $128.11 for him to show that he was 90% dependent on fishing that year.[7] *See* formula set out in 20 AAC 05.660(2), *supra* n. 5. Federal income tax returns appended to his application indicated that White had received $10,330.00 in income other than wages in 1972. The CFEC wrote to White shortly after it received the application and stated that if he did not submit a federal income tax form (Schedule C) detailing the sources of each item of income, it would assume that "most" of it derived from nonfishing occupational sources, and thus deny him dependence points.

White sent the CFEC additional documentation showing that the $10,330.00 figure represented income (and losses) resulting from nonfishing as well as fishing busi-

---

1. Decision in this case was deferred pending determination of the constitutional issues raised in *State v. Ostrosky*, 667 P.2d 1184 (Alaska 1983).

2. 20 AAC 05.520(a) provides, in relevant part, that "[e]very applicant shall have the burden of establishing his qualification for an entry permit."

3. 20 AAC 05.660(1) defines "annual catch value" as

    the number of pounds of any species of fish caught by an applicant in the fishery for which he is applying, as derived from fish tickets, during a given year, multiplied by the average price per pound paid for the species in that fishery during the year, or the gross amount actually received for the calendar year from harvesting the fishery resource commercially while participating as a gear license holder in the fishery for which he is applying ....

4. "Nonfishing occupational income" is defined in 20 AAC 05.660(3) as

    that portion of earned income that comes from sources other than commercial fishing. It includes gross wages, salaries, professional fees and other amounts received as compensa-

    tion for personal services actually rendered including cost of living allowances. In the case of an applicant engaged in a trade or business other than commercial fishing, the net profits of such trade or business shall be included as nonfishing occupational income. Pensions, interest, dividends, other investment income, and income received directly from participating in any fishery as a gear license holder or crewman will not be included ....

5. 20 AAC 05.660(2) defines "income dependence percentage" as "the annual catch value divided by the sum of the annual catch value and the nonfishing occupational income, with the result multiplied by 100."

6. There is an unexplained discrepancy in the record regarding the value of White's 1972 catch. Although his permit application indicated his annual catch value was $1,153.00 in 1972, he reported the figure as $5,109.00 in his 1972 federal income tax return.

7. Assuming *arguendo* that the annual catch value was $5,109.00, see *supra* n. 6, the permissible amount of nonfishing occupational income would be $567.67.

ness activity. The forms indicated that he had drawn $14,868.00 in revenue from Harbor Plumbing and Heating, a business he owned as sole proprietor, and had lost $4,538.00 in commercial fishing, yielding net business revenue in 1972 of $10,330.00.

The CFEC thereafter issued White a formal classification notice indicating that he had been awarded fifteen points and had been denied the six he claimed for 1972 income dependence. He was therefore five points short of the twenty necessary to assure him that he would be able to participate in the drift gill net fishery in Southeast Alaska. The classification notice advised him that he had a right to request an administrative hearing on the classification on or before July 24, 1975. White did not file such a request, and on February 2, 1976 he was notified that his permit application had been denied because of an inadequacy of points.

Shortly thereafter, the CFEC advised White that, pursuant to 20 AAC 05.-520(a)(1), he would be given an opportunity to submit additional evidence supporting his application. In response, White prepared and submitted affidavits bearing upon his occupational history in 1972. The affidavits showed that in 1971 he had purchased and commenced operating three vessels in the power troll and drift gill net fisheries. For several years prior to 1972, he had owned and managed Harbor Plumbing and Heating. In January 1972, he had entered into an agreement with his brother, delegating to the latter authority over the operation of the plumbing business in order to permit James to fish full-time. In their affidavits, both men asserted that James' brother had operated the business without James' assistance except for occasional conferences on policy and management problems. James stated that he had spent "better than 90% of [his] time in activities relating to commercial fishing, trolling and gillnetting," and referred to the opinion of his accountant that $14,868.00 represented a fair annual return on his $100,000.00 investment in the business.

The CFEC declined to award White any additional points on the basis of these affidavits. The notification stated that he was not entitled to an administrative hearing on the decision, referring to 20 AAC 05.-520(e),[8] but did inform him that he could appeal the decision to the superior court. On appeal, the superior court affirmed the decision of the CFEC.

## II.

White contends that the superior court erred in upholding the CFEC's interpretation of its regulations defining "nonfishing occupational income." Specifically, White argues that the income he received from the plumbing business was not "earned," that it was not "received as compensation for personal services actually rendered," and that he was not "engaged in" business within the meaning of 20 AAC 05.660(3), *supra* n. 4. He takes the position that his income from Harbor Plumbing and Heating was "investment income" and therefore

---

**8.** 20 AAC 05.520(e) provides:

> A commission decision upon evidence submitted under (d) of this section does not constitute a determination for which the applicant may request and receive an administrative hearing under 20 AAC 05.805 if the applicant has already received the opportunity to request and receive an administrative hearing under 20 AAC 05.805(b)(1).

White submitted additional evidence to the CFEC pursuant to 20 AAC 520(d)(1). 20 AAC 05.805 states in pertinent part:

> (a) An applicant or other party may request an oral or written administrative hearing by filing a request with the commission. The request for a hearing must contain a statement of why the commission's determination

should be changed, and indicate which findings of fact, or interpretation of regulation, or interpretation of statute the party believes to be in error. An administrative hearing will be granted upon the determination that the written request for a hearing demonstrates a genuine issue in contention.

> (b) The following schedule governs requests for a hearing:
> (1) Application classification or denial. The request for a hearing must be received on or before the 45th day following the mailing date of the notice of classification or notice of denial, whichever was earlier.

As previously noted, White had failed to request a hearing within the 45-day period following his June 9, 1975 classification notice.

**1322**

should not have been included in the calculation of his nonfishing occupational income.

The threshold question in an administrative appeal is whether the record is adequate to permit meaningful judicial review. *Fields v. Kodiak City Council*, 628 P.2d 927, 932 (Alaska 1981). If it is not, and the basis of an administrative decision is unclear, it may be necessary to remand the case for preparation of a record revealing the agency's reasoning process. *Id.* at 932; *Moore v. State*, 553 P.2d 8, 36 & n. 20 (Alaska 1976). "Only by focusing on the relationship between evidence and findings, and between findings and ultimate action, can we determine whether the [agency's] action is supported by substantial evidence." *Fields*, 628 P.2d at 933.[9] Although White has not specifically argued that the lack of findings by the CFEC constitutes reversible error, we consider this point because the deficiency is manifest on the record before us. *See Hewing, supra* n. 9, 512 P.2d at 898 n. 4.

The CFEC provided no reasons in support of its decision to deny White economic dependence points. It merely told him that "no additional points may be verified toward your application referenced above based upon the evidence you have submitted." As the CFEC itself noted in its brief before this court, "one cannot tell whether the Commission ruled adversely to White on the factual issue, or whether its ruling was based on legal grounds, i.e., its interpretation of 20 AAC 05.660(3)." It is impossible to ascertain whether the CFEC rejected White's factual claim that he was not involved in the day-to-day operation of the plumbing business [10] or whether it concluded as a matter of law that income from a sole proprietorship should necessarily be deemed "nonfishing occupational income" within the meaning of 20 AAC 05.660(3). Thus, the superior court did not have the reasons for the CFEC's decision before it and should have remanded the case for adequate findings. In not doing so, the superior court committed reversible error.

Furthermore, in light of our decision in *Forquer v. CFEC*, 677 P.2d 1236 (Alaska, 1984), we hold that White is entitled to a hearing on remand. In *Forquer*, we held that 20 AAC 05.520(e), *supra* n. 8, was invalid, being inconsistent with statutory due process rights granted under AS 16.43.260(c) of the Limited Entry Act.[11] *Forquer v. CFEC*, 677 P.2d at 1243. The appellants in *Forquer*, like White, had been denied a hearing concerning the additional evidence submitted pursuant to 20 AAC 05.520(d)(1) because they had been afforded an opportunity for a hearing in 1975. *Forquer v. CFEC*, 677 P.2d at 1240. We re-

---

9. In addition to these general considerations, particular statutory provisions governing CFEC action dictate that a decision be supported by adequate findings.

AS 16.43.120(a) provides, in pertinent part, that "final administrative determinations by the commission are subject .to judicial review as provided in AS 44.62.560—44.62.570," and AS 44.62.570(b) provides that the superior court hearing an appeal from an administrative determination is to inquire, *inter alia,* into

whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

AS 44.62.570(b) has been construed to require that findings be made to support decisions in workers' compensation cases. *See Hewing v. Alaska Workmen's Compensation Board,* 512 P.2d 896, 898 n. 5 (Alaska 1973). Although such a requirement has not been imposed categori-

cally in cases involving applications for limited entry permits, compliance with AS 44.62.570(b) is practically impossible absent some indication of the basis of the CFEC's action.

10. The CFEC argues on appeal that White had occasional management conferences with his brother and that their own affidavits furnish an evidentiary basis for a conclusion that White was involved in the operation of the plumbing business.

11. AS 16.43.260(c) provides, in pertinent part:

When an applicant is unable to establish his qualifications for an entry permit by submitting the specific verified evidence required in the application by the commission, the applicant may request and obtain an administrative adjudication of the application .... At the hearing the applicant may present alternative evidence of qualifications for an entry permit.

jected the CFEC's contention that the provision for a hearing after the initial classification was sufficient to satisfy the statute's requirements, and remanded for hearings in two of the three consolidated cases. We follow the same course here.

### III.

We now turn to the question of the proper scope of the hearing on remand. When the CFEC awarded White 15 points in 1975, it gave him the opportunity to appeal its denial of additional points; he did not take advantage of this opportunity. When it solicited and received new evidence from him, however, it began a new adjudication distinct from its 1975 determination. *See Ostman v. CFEC,* 678 P.2d 1323 at 1328 (Alaska 1984). By its own terms, this new proceeding was limited to "evidence in support of *additional* point claims"; the wisdom of the Commission's 1975 decision to award White 15 points was not in issue.[12] White, the CFEC, and the superior court have all focused on the six income dependence points White was denied, and our inability to determine how the Commission reached its decision has to do with the decision on these six points. The remand now ordered, therefore, is limited to the question of whether or not White is entitled to six points for income dependence for 1972.

During oral argument before the superior court, counsel for the CFEC suggested that the Commission might, in yet another proceeding, revoke points already granted in the event a remand was ordered. In an effort to forestall this possibility, White attempted to amend his prayer for relief; the superior court denied his motion. The superior court's oral decision implies that it did not reach the issue of whether and under what circumstances the Commission might be able to revoke points it had already awarded. Instead, the superior court chose to reject White's arguments on the merits.

We decline to issue what would in effect be a declaratory judgment on the CFEC's power to re-examine its point awards. The record does not show to what extent White has relied on what is now an eight-year failure to re-examine the 15 points he was granted. Nor does it indicate whether or not witnesses and records relevant to that award are still available. For its part, the Commission has not cited a statute or regulation which gives it the power to do what White fears it will do. In this proceeding the Commission has never answered the question its counsel and White's pose. Because White's 1979 appeal did not put the 15 points awarded him in issue, that question was not properly before the superior court and it is not properly before this court. Thus, we need not answer it.

### IV.

The case is REVERSED and REMANDED for proceedings consistent with this decision.[13]

---

12. In context, "additional point claims" means "claims for points which the Commission has not already awarded." See 20 AAC 05.520(d) (implying that new evidence deadline applies to claims which have been submitted to and denied by the CFEC as well as to new claims.) The Commission has not argued that the fact that it had considered and rejected White's claim for the additional six points precluded him from submitting more evidence to support this claim.

13. Consideration of White's constitutional claims would be premature at this time.