723 P.2d 875

**In the Matter of the Application of HAYDEN PINES WATER COMPANY for an Order Approving Revised Rates and Charges for Water Service in the State of Idaho.**

**HAYDEN PINES WATER COMPANY, Appellant,**

v.

**The Idaho PUBLIC UTILITIES COMMISSION, Respondent.**

**No. 16104.**

Supreme Court of Idaho.

July 15, 1986.

Morgan W. Richards, Jr. (argued), and Larry D. Spurgeon of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for appellant.

Jim Jones, Atty. Gen., and Peter Jason Richardson, Deputy Atty. Gen. (argued), Boise, for respondent.

BISTLINE, Justice.

Hayden Pines Water Company, a utility serving an area near Coeur d'Alene, Idaho, appeals from two orders issued by the Idaho Public Utilities Commission (Commission), which eliminated a portion of the rate base of Hayden Pines, denied Hayden Pines' return on that portion of the rate base, and denied Hayden Pines any depreciation with regard to that portion of the rate base. The Commission based its action on a decision to reduce Hayden Pines' rate base by certain connection fees and meter installation charges. Hayden Pines has appealed from Commission Order No. 19493 and Order No. 19773. As will be developed, we set aside these orders, but allow the Commission the option of further developing the record in connection with the issues raised on this appeal.

## I. BACKGROUND

The controversy concerns Hayden Pines' accounting of, or booking of, two kinds of fees. The first kind is "hook-up" or "con-

nection" fees—those charged to new customers for the privilege of connecting with the water system. The second is "meter installation charges"—obviously, those charged to customers for the installation of water meters. Both are collected when new houses or buildings are constructed.

The dispute in this case bears on Hayden Pines' rate base. This Court has defined a utility's rate base as:

the original cost minus depreciation of all property justifiably used by the utility in providing services to its customers. Utilities are allowed to charge customers rates which will yield a certain percentage return on the utility's total investment. Thus, the larger the utility's rate base, the higher the rates utilities can charge to customers. *Citizens Utilities Co. v. Idaho Public Utilities Commission,* 99 Idaho 164, 169, 579 P.2d 110, 115 (1978).

Initially, the material and labor expenses relating to connections and meter installations are booked as increases to the utility's rate base. The parties disagree on what constitutes proper means of accounting for the fees received for connections and meter installations. Hayden Pines states that there are two ways to account for or book these fees. They can be treated either as reduction of rate base (also termed "contribution in aid of construction") or as income (also called "reduction in the current revenue requirement"). The latter method results in the expenses of connection and of meter installation remaining in the rate base, but reducing the revenue requirement. "[T]he consistent use of one method," states Hayden Pines, "will not adversely affect a utility or its ratepayers."

The Commission states that plant investment is included in the rate base only when the utility invests its own funds, not those of the ratepayers. Where a ratepayer pays for the cost of installation or connection, that amount is a contribution in aid of construction, which reduces the rate base. The Commission states that whether a utility can book such fees as income with no reduction of rate base is not a fact, as Hayden Pines claims, but is an issue on appeal.

Hayden Pines replies with a four-part argument:

First, ... the Commission in the past has not only allowed Hayden Pines but also other utilities to treat meter installation fees and hookup charges as a reduction to the authorized revenue requirement. Second, ... the Internal Revenue Service prefers that utilities treat the aforementioned fees as a reduction in the current revenue requirement of the utility. Third, the Commission staff itself proposed to continue using meter fees as a reduction to the utility's revenue requirement in this case which is now on appeal. ... Finally, there is no dispute that the Uniform System of Accounts for Small Water Utilities does not require the treatment of meter installation fees as contributions in aid of construction. Either approach may be used.

The parties agree that the Commission can prospectively order the utility to use one accounting method or the other.

Hayden Pines booked both types of fees as income (reduction of revenue requirement) up to the Order No. 15996 of November 21, 1980. After that date, Hayden Pines booked connection fees as reduction of rate base, but continued to book meter installation fees as income until the Commission's Order of 1985. The parties dispute (1) whether Order No. 15996 pertained to fees collected during 1980 prior to November 21st, and (2) whether Order No. 15996 or an earlier order, No. 13088, required Hayden Pines to book meter installation fees as reduction of rate base. Both of these disputes the Commission resolved affirmatively and against Hayden Pines. They are essentially the issues before us on appeal.

The Commission addressed the two issues in its 1985 Order Nos. 19493 and 19773. Hayden Pines filed what ultimately became an amended application with the Commission for revised rates and charges for its entire service area in 1985. The

Commission's first order, No. 19493 found that "the Company's proposed rate must be reduced by $129,860 due to improper booking of meter installation charges. The Company has been including meter installation costs in its rate base since 1980. The Company was specifically ordered not to do so in ... Order No. 15996...."

A rehearing was granted, resulting in Order No. 19773. In that order, the Commission conceded that Order No. 15996 did not refer to meter installation costs, but determined that the reduction of rate base was proper. The Commission relied on the following language in 1977 Order No. 13088:

> HOOK UP FEES:
>
> $150 per Hookup
>
> $250 per Meter Installation, *to cover cost of installation of meter box and meter (⅜ inches).* (Emphasis added [in Order No. 19773].)

The Commission found "the clear meaning of the [emphasized] phrase is that the Company not add to its rate base the amount of contribution received *from its customers* for the installation of a matter." (Emphasis original.) The Commission found that its decision would have only prospective effect on the Company's rates. Finally, the Commission corrected a mathematical error on the amount of the rate adjustment.

The Commission separately addressed the issue of booking for 1980's meter installation charges and connection fees. The figure of $77,262—the amount collected in fees from that year—was not separated into fees collected for meter installation and for connection. First, the Commission found that Hayden Pines had violated Order No. 15996 (of November 21, 1980) by failing to book its connection fees of 1980 as contributions in aid of construction (which reduces the rate base) rather than as income. Second, the Commission found that the 1980 meter installation fees also should be booked as contributions for the same reasons as pertained to the 1981–85 meter installation fees. The Commission concluded that since both types of fees should have been booked as contributions, distinguishing between them was irrelevant.

## II. STANDARD OF REVIEW

 This Court has original jurisdiction over appeals from orders of the Commission. Idaho Const. art 5, § 9; I.C. § 61–627. The standard of review for these orders is addressed in I.C. § 61–629,[1] which provides:

> **61–629. Matters reviewable on appeal—Extent of review—Judgment.—** No new or additional evidence may be introduced in the Supreme Court, but the appeal shall be heard on the record of the commission as certified by it. *The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho.* Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside or setting aside in part the order of the commission. In case the order of the commission is set aside or set aside in part, the commission, upon its own motion or

---

1. Although the Commission falls within the Idaho Administrative Procedure Act's (IAPA's) definition of an "agency," I.C. § 67–5201(1) (" 'agency' means *each* state board, *commission,* department or officer authorized by law to make rules or to determine contested cases...." (Emphasis added.) ), and the ratemaking proceedings involving Hayden Pines fall within the IAPA's definition of a "contested case," *id.* at (2) (" 'contested case' means a proceeding, including but not restricted to *ratemaking* and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing...." (Emphasis added.) ), the IAPA *expressly excludes* the Commission from the purview of its section on judicial review, I.C. § 67–5215(a) ("A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of an agency *other than* the industrial commission or the *public utilities commission* is entitled to judicial review under this act." (Emphasis added.) ).

upon motion of any of the parties, may alter or amend the order appealed from to meet the objections of the court in the manner prescribed in section 61–624, Idaho Code. (Emphasis added.)

From that statute this Court has derived the following:

In light of this limited review [as established in I.C. § 61–629], this Court has held:

"The Commission is a fact finding, quasi-legislative body authorized to investigate and determine issues presented by a utility's petition for increased rates. Where its findings are supported by *competent and substantial evidence* this Court is obliged to affirm its decision." *Boise Water Corp. v. Idaho Public Utilities Commission*, 97 Idaho 832, 838, 555 P.2d 163, 169 (1976); *Application of Pacific Telephone & Telegraph Co.*, 71 Idaho 476, 480, 233 P.2d 1024, 1026 (1951).

Recently, this Court has reemphasized the limited review we may make. "In reviewing findings of fact we will sustain a Commission's determination unless it appears that the clear weight of the evidence is against its conclusion or that the evidence is strong and persuasive that the Commission abused its discretion." *Utah-Idaho Sugar v. Intermountain Gas Co.*, 100 Idaho 368, 376, 597 P.2d 1058, 1066 (1979).

Thus, our focus must be upon the evidence presented to the Commission. *If the evidence is competent and substantial in support of the findings made and there has been no clear abuse of discretion, this Court is constrained to affirm those findings. Grindstone Butte Mutual Canal Co. v. Idaho Public Utilities Commission*, 102 Idaho 175, 178, 627 P.2d 804, 807 (1981) (emphasis added); *see also Idaho Power Co. v. Idaho Public Utilities Commission*, 108 Idaho 943, 945, 703 P.2d 707, 709 (1985).

Conversely, if the findings of the Commission are not supported by substantial and competent evidence, or the Commission clearly abused its discretion, then this Court must afford relief to the appellant. *Grindstone, supra*, 102 Idaho at 178, 627 P.2d at 807; *see also, e.g., Key Transportation, Inc. v. TransMagic Airlines Corp.*, 96 Idaho 110, 112, 524 P.2d 1338, 1340 (1974) ("The Commission's ruling will be reversed only when it appears that the Commission failed to follow the law or has abused its discretion.").

In the recent case of *Idaho State Insurance Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927 (1985), this Court described the appropriate test for substantial competent evidence as follows:

In *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346 (1978), this Court discussed the test for determining what constitutes substantial evidence for the purposes of judicial review of an administrative agency's action. We observed:

The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. *Id.* at 633, 586 P.2d at 1349.

Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, *id.* at 634, 586 P.2d at 1350, though "something less than the weight of the evidence." *Consolo v. FMC*, 383 U.S. 607, 620 [86 S.Ct. 1018, 1026, 16 L.Ed.2d 131] (1966). "Put simply," we wrote, "the substantial [competent] evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.' 4 Davis, Administrative Law Text § 29.01–02 at 525–530." *Local 1494, supra*, 99 Idaho at 634, 586 P.2d at 1350....

In deciding whether the agency's findings of fact were reasonable, reviewing courts should not "read only one side of the case and, if they find any evidence there," sustain the administrative action and ignore the record to the contrary. *Universal Camera [Corp. v. N.L.R.B.], supra*, 340 U.S. [474] at 481 [71 S.Ct. 456

at 461, 95 L.Ed. 456]; *quoted in Local 1494, supra,* 99 Idaho at 634, 586 P.2d at 1350. Certainly reviewing courts should not "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo." Universal Camera, supra,* 340 U.S. at 488 [71 S.Ct. at 465].... Nevertheless, reviewing courts should evaluate whether "the evidence supporting that decision [under review] is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Universal Camera, supra,* 340 U.S. at 488 [71 S.Ct. at 465]; *quoted in Local 1494, supra,* 99 Idaho at 634, 586 P.2d at 1350....

Reviewing courts should not automatically reject an agency finding of fact that is supported by substantial competent evidence "merely because the agency also incidentally mentions incompetent or irrelevant material." *Braniff Airways, Inc. v. CAB,* 379 F.2d 453, 466 (D.C.Cir. 1967); *quoted in Consolidated Gas Supply v. Federal Energy Regulatory Commission,* 606 F.2d 323, 329 (D.C.Cir. 1979), *cert. den.* 444 U.S. 1073 [100 S.Ct. 1018, 62 L.Ed.2d 755]. If this happens, "[t]he appropriate standard is to remand for correction of an error only when there is substantial doubt that the administrative agency would have reached the result it did absent reference to the material. [Citations.]" *Consolidated Gas, supra,* 606 F.2d at 329. *Id.* 110 Idaho at 260–61, 715 P.2d at 930–31 (some citations omitted).

■ In addition, where the record is inadequate to permit the reviewing court to determine whether or not an agency's action is supported by substantial competent evidence, a remand to the agency for further development of the record may be required. *White v. Alaska Commercial Fisheries Entry Commission,* 678 P.2d 1319, 1322 (Alaska 1984); *Stempel v. Department of Water Resources,* 82 Wash.2d 109, 508 P.2d 166, 169 (1973); *see Boise Water Corp. v. Idaho Public Utilities Commission,* 97 Idaho 832, 840, 555 P.2d 163, 171 (1976) ("What is essential are sufficient findings to permit the reviewing court to determine that the Commission has acted non-arbitrarily."). As with references to incompetent or irrelevant material, the inadequacy of the record must be such that, depending on its resolution, the agency might have reached a different result. *Salt River Project Agricultural Improvement and Power Dist. v. United States,* 762 F.2d 1053, 1060 n. 8 (D.C.Cir.1985) ("Under the *Chenery* doctrine, '[w]hen an administrative decision is based on inadequate or improper grounds, a reviewing court may not presume that the [agency] would have made the decision on other, valid grounds.' [Citations omitted.]").

With the above as guidance, we now review the Commission's orders.

## III. THE 1980 CONNECTION AND INSTALLATION FEES

In Order No. 19773, the Commission found the following regarding the 1980 meter and installation fees:

On November 21, 1980, the Commission issued Order No. 15996. That order, quoted below, required the Company to begin booking its connection fees as contributions rather than as revenue:

Staff witness Schunke recommended against treating connection fees as revenues and proposed a different schedule of fees. He recommended that connection fees be treated as contributions, rather than revenues, because the amount of connection fees received from year to year vary too much. If the fees do vary significantly from year to year, the variations could distort the Company's net operating income and cause the Company to show sharp changes in earnings. Treating connection fees as contributions will remove them from the Company's operating statement and prevent such distortions. We agree with witness Schunke on this issue, and accordingly

order that the Company treat its connection fees as contributions rather than revenues.

Staff's adjustment in the current case removed the entire amount booked in 1980 for both meter installation fees and connection fees. This amount, $77,262, cannot be broken down into its component parts. That is, it is impossible to determine how much of the $77,262 came from meter installation fees and how much of that figure came from connection fees.

Staff witness Miller asserts that Order No. 15996 was issued in time for the Company to make a year-end adjustment to its books segregating meter installation fees from hook-up fees and properly booking hook-up fees as contributions. The Company claims that for practical purposes, the year 1980 had ended by the time Order No. 15996 was issued and that it was impossible to go back and segregate the two charges. The Company argues that it complied with Order No. 15996 by not booking hook-up fees as revenue after that order was issued.

We find that the Company was in clear violation of Order No. 15996 when it failed to book its 1980 hook-up fees 'as contributions. However, since both Hayden Pines' hook-up fees *and* meter installation fees were improperly booked for that year it is not necessary to separate them. We find that Staff's $77,262 adjustment for 1980 was proper.

Hayden Pines does not dispute that the figure of $77,262 cannot be separated into connection and installation fees. Nor does Hayden Pines dispute that it could have booked its 1980 fees as contributions in aid of construction after the November 21, 1980 order and before December 31, 1980, the end of its fiscal year. However, Hayden Pines disputes the Commission's finding that Order No. 15996 required them to book the fees [2] collected prior to the No-

vember 21, 1980 date of the order. Hayden Pines asserts without dispute that it cannot at this point request higher rates for the period of 1981–84 to compensate for the lower revenue and rate base resulting from the accounting which the Commission's present order mandates. Thus, if the Commission's order is not supported by substantial competent evidence, it did result in prejudice to Hayden Pines.

■ As best we can determine, Order No. 15996 is ambiguous as to whether it required the fees collected from January 1 to November 21, 1980 to be booked as contributions in aid of construction. The passage from Order No. 15996 which the Commission quoted, which indicates the Commission determined that Hayden Pines should treat connection fees as contributions, fails to specify whether or not those fees collected *that year prior to the date of the order* should be so booked. We have reviewed Order No. 15996 from beginning to end, including its page 12 to which the Commission referred us, and have been unable to find clear indication either that the fees collected prior to November 21, 1980 were to be booked as contributions, or that only connection fees collected after that date were to be so booked.

The factual ambiguity is significant. If further findings of fact were to demonstrate that Order No. 15996 did not intend to require the connection fees collected earlier to be booked as contributions, then the Commission would have to conclude that those fees (including both connection and meter installation fees) should not now reduce Hayden Pines' rate base.[3] *Cf. Salt River, supra,* 762 F.2d at 1060–61 n. 8.

Consequently, in applying the substantial competent evidence test, the record is insufficient to permit us to hold (1) that the Commission's finding on this issue was reasonable, or (2) that the insufficiency of the record is insignificant. This Court has

---

**2.** We refer to both types of fees collectively because the parties agree that they cannot now be separated into the two types.

**3.** As will be explained in Part IV, we do not find substantial competent evidence to support the Commission's findings that these fees must *always* be booked as contributions in aid of construction.

stated: "What is essential are sufficient findings to permit the reviewing court to determine that the Commission acted non-arbitrarily." *Boise Water, supra,* 97 Idaho at 840, 555 P.2d at 171.

However, neither are we prepared to hold that the order is unreasonable (*i.e.,* unsupported by substantial competent evidence). We believe the record to Order No. 15996 (and perhaps other evidence), might disclose the effective date of that order. Accordingly, we set aside the decision of the Commission on this issue without holding that it is either valid or invalid, and remand the decision to the agency for further determinations pursuant to I.C. § 61–624 on the question of the effective date of the pertinent part of Order No. 15996. *White, supra,* 678 P.2d at 1322; *Stampel, supra,* 508 P.2d at 169. If the evidence demonstrates that the Commission did un-ambiguously direct Hayden Pines to book the connection fees collected from January 1 through November 21, 1980 as contributions, then the result on this issue was correct. If the Commission cannot determine the effective date of Order No. 15996, then the result was not correct. The finding that Order No. 15996 directed Hayden Pines to book these fees as contributions would be unsupported by substantial competent evidence, and thus invalid.[4]

## IV. METER INSTALLATION FEES COLLECTED FROM 1981–1984

The Commission found that Hayden Pines improperly booked meter installation fees collected from 1981 to 1984 as income rather than as contributions in aid of construction. Hayden Pines argued (1) that it never had been instructed not to book them as income and (2) that booking these fees as income is a proper alternative to booking

them as contributions. We will discuss each argument in turn.

In Order No. 19773, the Commission found that Order No. 13088, issued in 1977, had required Hayden Pines to book meter installation fees as contributions in aid of construction:

[T]he Company has been on notice since 1977 that it was to book its meter installation charges as an offset to plant-in-service. Order No. 13088, (the Commission's pioneer rate setting order for Hayden Pines, issued in April, 1977) stated, in part:

HOOK–UP FEES:

$150 Per Hookup

$250 Per Meter Installation, *to cover cost of installation of meter box, and meter (¾").* (emphasis added).

We agree with Staff's interpretation of the above underscored passage that, in 1977, the Company was ordered to credit its plant-in-service account by the amount of meter installation fees that it collects. Crediting the plant-in-service account reduces rate base by the amount of the credit. The Commission did not add the modifying phrase, "to cover cost of installation of meter box, and meter" gratuitously. The clear meaning of that phrase is that the Company not add to its rate base the amount of contribution received *from its customers* for the installation of a meter. (Emphasis original in Order No. 19773.)

■ The Commission's reading of Order No. 13088 fails to account for the parenthetical which limits this provision to only ¾–inch meters. Meters also come in larger sizes. Had this order intended with this language to require that all meter fees be booked as contributions, then it surely

---

4. As will be explained in Part IV, we set aside the Commission's finding that Order No. 13088 required Hayden Pines to book meter installation fees as contributions in aid of construction. Thus, if the Commission determines that its Order No. 15996 did not specify its effective date, then the meter installation fees as well as the connection fees collected that year were properly booked as income. If the Commission

finds the opposite, then, assuming the 1980 fees cannot be separated into meter and installation fees, all those fees were required to be booked as contribution. The burden would be on Hayden Pines to distinguish between the two types of fees collected in 1980. *See Utah Department of Business Regulation, Division of Public Utilities v. Public Service Commission,* 614 P.2d 1242, 1245 (Utah 1980).

would not have included the reference to ¾ –inch meters.

Even apart from the reference to ¾–inch meters, the quoted language says only that the $250 is to cover the "cost of installation;" on its face it does not mandate a particular method of accounting. The Commission in Order No. 13088 quoted the "cost" language at issue from Hayden Pines' own tariff sheets. Hayden Pines' President Ford testified that this language was meant to refer only to the amount or *rate* of the fees and not to the method of accounting. When quoting from the tariff sheets, the Commission itself described them as a request for rates: "With the original application, Applicant sought *rates* as follows ... [then quoting from Hayden Pines' tariff sheets]." (Emphasis added.) When viewed in context, there appears little question that this language does not by itself constitute an order to book meter installation fees as contributions in aid of construction. We hold the Commission's finding to the contrary unsupported by substantial competent evidence in the extant record.

■ The Commission found and now argues that utilities may never book such fees, which pay for the utility's "plant," as revenue. To do so, the Commission reasons, would result in the cost of the "plant" remaining in the rate base, resulting in unjustifiably higher rates to the ratepayers. Hayden Pines responds and there seems no dispute that by booking the fees as income, the utility reduced its revenue requirement and concomitantly the rates charged to the ratepayers.[5] Further, Hayden Pines asserts and there seems no dispute that had it been required to book these fees as contributions rather than income, it justifiably could have requested higher rates to compensate for the loss of

revenues. Thus, as best we can determine, Hayden Pines would be prejudiced by the Commission now reducing its rate base by the amount of the fees collected, since it cannot recoup the accompanying loss in future rates from rates charged during the 1981–84 period.[6] Finally, Hayden Pines points out and there is no dispute that the IRS, the Uniform System of Accounts for Small Water Utilities, and the Commission itself in the past have all permitted utilities to treat these fees as income. In light of the foregoing, we hold that the Commission's finding that meter installation fees may never be booked as income (and reduction of revenue requirement) is not supported by substantial competent evidence in the extant record.

In accordance with our holdings that the Commission's findings related to this issue lack the support of substantial competent evidence, this part of the Commission's order is set aside. The Commission is not precluded from reconsidering this issue and hearing new evidence in a proceeding pursuant to I.C. §§ 61–624 and 61–629 ("In case the order of the commission is set aside ... the commission, upon its own motion or upon motion of any of the parties, may alter or amend the order appealed from to meet the objections of the court in the manner prescribed in section 61–624, Idaho Code.").[7]

## V. CONCLUSION

That part of the order pertaining to fees collected from January 1 to November 21, 1980 is set aside and remanded for further development of the record pursuant to I.C. § 61–624. That part of the order pertaining to meter installation fees collected from 1981–84 is set aside with the Commission

---

5. At oral argument, counsel for the Commission disputed this, contending that the fees would have to be properly averaged over a period of time. However, the record does not disclose whether or to what extent such averaging was done. Nor does it disclose what would constitute "proper" averaging.

6. We recognize that Hayden Pines derived some benefit from retaining the cost of meter installations in its rate base over the period of 1981–84.

7. The Commission asked that we determine whether this appeal was frivolous. It should be apparent by now that we do not so find it.

having the option of reconsidering that issue pursuant to I.C. §§ 61–624 and 61–629.

Costs to appellant.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.

HUNTLEY, Justice, concurring specially.

I concur in the analysis of the majority demonstrating why this case must have its order set aside and be referred back for further proceedings. However, I would invite the parties' attention to another possible basis for resolving the issue of the effect of Order No. 15996 of 1980.

I particularly invite the attention of the parties and of the commission to page 6 of that order, which sets forth a figure of $74,608 for total water revenues and a figure of $316,217 for a rate base.

Both attorneys admitted at oral argument that they did not know what was included in each of those numbers. More particularly, they did not know whether the revenue figure included hook up or connection fees or not. It appears to me from a view of the entire record that that figure approximates annual revenues exclusive of such fees, and if that is the fact, and if it is the further fact that the rate base figure did *not* include capital items supplied by the customers, then, in that event, it is perfectly clear that the 1980 order presents no problems and this appeal should not even be before us:

In other words, it would seem to me to be totally inconsistent that the commission in entering the order would have done anything other than exclude the fees from the revenue figure and the customer supplied assets from the rate base—to have done otherwise would have made the order internally inconsistent.

Accordingly, it is my suspicion that if the commission and the parties would simply reexamine the evidence of the 1980 case which supports those two numbers, the case could be settled because there would be no controversy to support either this appeal in the first instance or further proceedings at the present juncture.

This Court's majority opinion states at 337, 723 P.2d at page 881.

Hayden Pines asserts without dispute that it cannot at this point request higher rates for the period of 1981–84 to compensate for the lower revenue and rate base resulting from the accounting which the Commission's present order mandates.

Such would not be true if the above analysis which I have presented proves to be correct.

At page 339, 723 at page 883 of the opinion, the majority states:

Hayden Pines responds and there seems no dispute that by booking the fees as income, the utility reduced its revenue requirement and concomitantly the rates charged to the ratepayers. Further, Hayden Pines asserts and there seems no dispute that had it been required to book these fees as contributions rather than income, it justifiably could have requested higher rates to compensate for the loss of revenues. Thus, as best we can determine, Hayden Pines would be prejudiced by the Commission now reducing its rate base by the amount of the fees collected, since it cannot recoup the accompanying loss in future rates from rates charged during the 1981–84 period.

Again, that assertion of Hayden Pines would not necessarily be true if the genesis of the revenue figure and the rate base figure is as I suspect.